# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**XL SPECIALTY INSURANCE COMPANY,**
70 Seaview Avenue
Stamford, CT 06902

    Plaintiff,

v.

**BIGHORN CONSTRUCTION AND
RECLAMATION, LLC,**
777 Main Street, Suite 2800
Fort Worth, TX 76102
County of Residence: Tarrant County

SERVE ON: URS Agents, LLC
     3610-2 N. Josey Lane, Suite 223
     Carrollton, Texas 75007

and

**BRIDGELINK ENGINEERING, LLC,**
777 Main Street, Suite 2800
Fort Worth, TX 76102
County of Residence: Tarrant County

SERVE ON: URS Agents, LLC
     3610-2 N. Josey Lane, Suite 223
     Carrollton, Texas 75007

and

**BRIDGELINK COMMODITIES, LLC,**
777 Main Street, Suite 2800
Fort Worth, TX 76102
County of Residence: Tarrant County

SERVE ON: URS Agents, LLC
     3610-2 N. Josey Lane, Suite 223
     Carrollton, Texas 75007

and

Civil Action No. 1:21-cv-03068

**BRIDGELINK INVESTMENTS, LLC,**
777 Main Street, Suite 2800
Fort Worth, TX 76102
County of Residence: Tarrant County

SERVE ON:  URS Agents, LLC
                        3610-2 N. Josey Lane, Suite 223
                        Carrollton, Texas 75007


and


**BRIDGELINK DEVELOPMENT, LLC,**
777 Main Street, Suite 2800
Fort Worth, TX 76102
County of Residence: Tarrant County


and

**BRIDGELINK RENEWABLE ENERGY
INVESTMENTS LLC,**
777 Main Street, Suite 2800
Fort Worth, TX 76102
County of Residence: Tarrant County

SERVE ON:  URS Agents, LLC
                        3610-2 N. Josey Lane, Suite 223
                        Carrollton, Texas 75007

and


**INTERMOUNTAIN ELECTRIC SERVICE,
INC.,**
777 Main Street, Suite 2800
Fort Worth, TX 76102
County of Residence: Tarrant County

SERVE ON:  Corporation Service Company
                        D/B/A CSC-Lawyers Inc.
                        211 E. 7th Street Suite 620
                        Austin, Texas 87801


and

**BIGHORN INVESTMENTS AND
PROPERTIES, LLC,**
777 Main Street, Suite 2800
Fort Worth, TX 76102
County of Residence: Tarrant County

SERVE ON:  URS Agents, LLC
            3610-2 N. Josey Lane, Suite 223
            Carrollton, Texas 75007

and

**COLE W. JOHNSON,**
1301 Old Tin Top Road
Weatherford, TX, 76087
County of Residence: Parker County

and

**CORD H. JOHNSON,**
127 Trace Drive
Weatherford, TX 76087
County of Residence: Parker County

and

**CASSIE J. HAMILTON**
127 Trace Drive
Weatherford, TX 76087
County of Residence: Parker County

                    Defendants.

## VERIFIED COMPLAINT

Plaintiff, XL Specialty Insurance Company, by way of Verified Complaint against

Defendants, Bridgelink Engineering, LLC, Bridgelink Commodities, LLC, Bridgelink

Investments, LLC, Bridgelink Development, LLC, Bridgelink Renewable Energy Investments,

LLC, Intermountain Electric Service, Inc., Bighorn Investments and Properties, LLC, Bighorn

Construction and Reclamation, LLC, Cole W. Johnson, Cord H. Johnson, and Cassie J. Hamilton, alleges as follows:

## JURISDICTION AND VENUE

1.      Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1332 in that this is an action between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

2.      Venue is proper in the District of Maryland pursuant to the 28 U.S.C. § 1391(2) to the extent it is the location where a substantial part of the events giving rise to the claim occurred.

## THE PARTIES

3.      At all relevant times hereinafter mentioned, XL Specialty Insurance Company ("XL") was and is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business in Stamford, Connecticut.

4.      Upon information and belief, Bridgelink Engineering, LLC ("Bridgelink Engineering") was and is a corporation organized and existing under the laws of Fort Worth, Texas, and has its principal place of business at 777 Main Street, Suite 2800, Fort Worth, Texas 76102.

5.      Upon information and belief, Bridgelink Commodities, LLC ("Bridgelink Commodities") was and is a corporation organized and existing under the laws of Fort Worth, Texas, and has its principal place of business at 777 Main Street, Suite 2800, Fort Worth, Texas 76102.

6.      Upon information and belief, Bridgelink Investments, LLC ("Bridgelink Investments") was and is a corporation organized and existing under the laws of Fort Worth, Texas, and has its principal place of business at 777 Main Street, Suite 2800, Fort Worth, Texas 76102.

7.     Upon information and belief, Bridgelink Development, LLC ("Bridgelink Development") was and is a corporation organized and existing under the laws of Fort Worth, Texas, and has its principal place of business at 777 Main Street, Suite 2800, Fort Worth, Texas 76102.

8.     Upon information and belief, Bridgelink Renewable Energy Investments, LLC ("Bridgelink Renewable Energy Investments") was and is a corporation organized and existing under the laws of Fort Worth, Texas, and has its principal place of business at 777 Main Street, Suite 2800, Fort Worth, Texas 76102.

9.     Upon information and belief, Intermountain Electric Service, Inc. ("Intermountain Electric Service") was and is a corporation organized and existing under the laws of Fort Worth, Texas, and has its principal place of business at 777 Main Street, Suite 2800, Fort Worth, Texas 76102.

10.     Upon information and belief, Bighorn Investments and Properties, LLC ("Bighorn Investments and Properties") was and is a corporation organized and existing under the laws of Fort Worth, Texas, and has its principal place of business at 777 Main Street, Suite 2800, Fort Worth, Texas 76102.

11.     Upon information and belief, Bighorn Construction and Reclamation, LLC ("BCR") was and is a corporation organized and existing under the laws of Fort Worth, Texas, and has its principal place of business at 777 Main Street, Suite 2800, Fort Worth, Texas 76102.

12.     Upon information and belief, Cole W. Johnson is an individual residing at 1301 Old Tin Top Road, Weatherford, TX 76087.

13.     Upon information and belief, Cord H. Johnson is an individual residing at 127 Trace Drive, Weatherford, TX 76087.

5

14.     Upon information and belief, Cassie J. Hamilton is an individual residing at 127 Trace Drive, Weatherford, TX 76087.

**GENERAL ALLEGATIONS**

I.   **THE INDEMNITY AGREEMENT**

15.     BCR, at all relevant times, was engaged in the construction contracting business.

16.     BCR was required to provide payment and performance bonds in connection with certain of its construction contracts.

17.     In consideration for and in order to induce XL, as surety, to issue bonds on behalf of BCR as principal, on June 25, 2021, Bridgelink Engineering, LLC, Bridgelink Commodities, LLC, Bridgelink Investments, LLC, Bridgelink Development, LLC, Bridgelink Renewable Energy Investments LLC, Intermountain Electric Service, Inc., Bighorn Investments and Properties, LLC, BCR, Cole W. Johnson, Cord H. Johnson, and Cassie J. Hamilton (collectively, the "Indemnitors") executed a General Agreement of Indemnity in favor of XL, as indemnitee (the "Indemnity Agreement").

18.     A true and accurate copy of the Indemnity Agreement is attached hereto as **Exhibit A**.

19.     Pursuant to Paragraph 3 of the Indemnity Agreement, the Indemnitors agreed, jointly and severally, to:

> To exonerate, indemnify, hold harmless and keep indemnified [XL] from and against all demands, claims, losses, costs, liabilities, damages, and expenses including, without limitation, attorney's fees, expert's fees, interest, court costs, investigative expenses, document reproduction and storage charges (collectively the "Surety's Loss") which [XL] may sustain or incur by reason of the issuance of the Bonds or Indemnitors' failure to perform or comply with any of the provisions of this Agreement or [XL] attempting to obtain a release of or evidence of termination under such Bonds.

Ex. A at ¶ 3

20.     In Paragraph 3 of the Indemnity Agreement, the Indemnitors further agreed, jointly

and severally, that:

> An itemized, sworn statement by an employee of [XL] or any other
> evidence of [XL's] Loss shall be prima facie evidence of propriety,
> amount and existence of Indemnitors liability to [XL]. Indemnitors
> shall pay to [XL] interest, including pre and post judgment interest
> on all disbursements made by [XL] at the maximum rate permitted
> by law, calculated from the date of each such disbursement.

Id. at ¶ 3

21.     Pursuant to Paragraph 5 of the Indemnity Agreement, the Indemnitors further

agreed, jointly and severally, that:

> In order to exonerate and indemnify [XL], to place [XL] in
> immediately available funds, in a form and amount deemed
> acceptable in the [XL]'s sole discretion, when requested to do so in
> order to meet and satisfy any claim, reserve established by [XL], or
> demand made upon [XL] under the Bonds (whether or not such
> claims or demands are contested by Indemnitors before [XL] shall
> be required to make payment under the Bonds). Indemnitors
> acknowledge that failure of Indemnitors to deposit such funds with
> [XL] in accordance with this section in the amounts, in a form and
> at the time demanded by [XL] shall cause irreparable harm for which
> [XL] has no adequate remedy at law. Indemnitors agree that [XL]
> shall be entitled to injunctive relief for specific performance of
> Indemnitors' obligation to deposit funds in accordance with this
> section and expressly waives and relinquishes any claims or
> defenses to the contrary.

Id. at ¶ 5

22.     Pursuant to Paragraph 8 of the Indemnity Agreement, the Indemnitors further

agreed, jointly and severally, that:

> [XL] may, at any time and for any reason in its sole discretion,
> require the Indemnitors upon written notice to immediately procure
> the full release of the Bonds or deliver to [XL] collateral security in
> the form acceptable to [XL]. The collateral security will be in an
> amount equal to 100% of all undischarged liability under all Bonds,

> which liability shall be determined by [XL] as of the date of written notice.

Id. at ¶ 8

23.     Pursuant to Paragraph 8 of the Indemnity Agreement, the Indemnitors further agreed, jointly and severally, that:

> Indemnitors acknowledge that failure to deposit such funds with [XL] in accordance with this section shall cause irreparable harm for which [XL] has no adequate remedy at law. Indemnitors agree that [XL] shall be entitled to injunctive relief for specific performance of Indemnitors' obligation to deposit funds in accordance with this section and expressly waive and relinquish any claims or defenses to the contrary. Collateral security to be provided to [XL] shall be sent to XL Specialty Insurance Company, 505 Eagleview Blvd., Suite 100, PO Box 636, Exton, PA 19341-0636, Attn: Collateral Manager.

Id. at ¶ 8

24.     Pursuant to Paragraph 4 of the Indemnity Agreement, the Indemnitors further agreed, jointly and severally, that:

> …if [XL] (i) receives any claim under any Bonds or (ii) establishes, in its sole discretion, any reserve, the Indemnitors will provide [XL] or its designees access to all records, including all financial records, of the Indemnitors for the purposes of examining and copying same.

Id. at ¶ 4

## II.     THE BONDS AND XL'S EXPOSURE

### a.     The Depcom Project

25.     Depcom Power, Inc. ("Depcom") executed a general contract ("Depcom Contract") to perform as general contractor on the project known as "MD70 Richfield Photovoltaic Power Plant" ("Depcom Project").

26.     Subsequent to the execution of the Indemnity Agreement, BCR entered into a subcontract ("Depcom Subcontract") with Depcom to perform work on the Project.

27.     On or about June 17, 2021, XL, as surety, issued a Subcontract Performance Bond ("Depcom Performance Bond") and Subcontract Payment Bond ("Depcom Payment Bond"), both bearing bond no. US00104943SU21A (collectively the "Depcom Bonds") on behalf of BCR, as principal, and in favor of Depcom, as obligee, in connection with the Depcom Project.

28.     True and accurate copies of the Depcom Bonds are attached hereto as composite **Exhibit B**.

29.     By letter dated October 6, 2021, Depcom issued notice to XL claiming that BCR removed its personnel and began to demobilize its equipment from the Project.

30.     Depcom also notified XL that it was aware of at least nine (9) sub-subcontractors and vendors that are owed balances from BCR that are past due.

31.     According to the schedule of unpaid sub-subcontractors and vendors provided by Depcom, it appears that BCR owes its subcontractors and vendors more than $1,230,000.

32.     By letter dated October 21, 2021, Depcom issued a termination notice to BCR terminating the Subcontract ("Depcom Termination").

33.     By letter dated November 5, 2021, counsel for Richfield Farms LLC ("Richfield") asserted a claim against the Depcom Payment Bond for labor and/or materials allegedly supplied to the Depcom Project, in the amount of $300,258.49, inclusive of finance charges.

34.     By letter dated November 12, 2021, counsel for United Rentals ("United Rentals") asserted a claim against the Depcom Payment Bond for labor and/or materials allegedly supplied to the Depcom Project, in the amount of $265,336.50.

35.     As a result of the Depcom Termination and Richfield's and United Capital's claims against the Depcom Payment Bond, XL is exposed to liability under its Depcom Bonds and has incurred, and will continue to incur, losses, costs, and expenses, including attorney's fees.

**b.   The Monmouth Project**

36.     MYR Energy Services, Inc. ("MYR") executed a general contract ("MYR Contract") to perform as general contractor on the project known as "Monmouth Solar Project" ("Monmouth Project").

37.     On or about June 11, 2021, <u>MYR</u> entered into a subcontract ("Monmouth Subcontract") with BCR whereunder BCR agreed to perform work on the Monmouth Project.

38.     On or about June 25, 2021, XL, as surety, issued a Subcontract Performance Bond ("Monmouth Performance Bond") and Subcontract Payment Bond ("Monmouth Payment Bond"), both bearing bond no. US00104945SU21A (collectively the "Monmouth Bonds") on behalf of BCR, as principal, and in favor of MYR, as obligee, in connection with the Monmouth Project.

39.     True and accurate copies of the Monmouth Bonds are attached hereto as composite **Exhibit C**.

40.     By letter dated November 30, 2021, MYR issued a Notice of Default of the MYR Subcontract to BCR, copying XL ("MYR Default").

41.     Within the MYR Default, MYR demands that certain defects be cured within seven (7) days and, if said defects remain uncured, MYR reserves its right to terminate the Monmouth Subcontract and make a claim against the Monmouth Performance Bond.

42.     As a result of the MYR Default, XL is exposed to liability under the Monmouth Performance Bond and has incurred, and will continue to incur, losses, costs, and expenses, including attorneys' fees.

## III.   XL'S DEMANDS UPON THE INDEMNITORS

43.     By letter dated November 11, 2021, XL requested, consistent with the express terms of the Indemnity Agreement, that the Indemnitors post collateral security with XL in the amount

of $2,000,000 in connection with Depcom's termination of BCR and the claim asserted by Richfield against the Depcom Payment Bond.

44.     A true and accurate copy of XL's November 11, 2021 letter to the Indemnitors is attached hereto as **Exhibit D**.

45.     Despite XL's November 11, 2021 demand letter, the Indemnitors have failed to, among other things, deposit collateral with XL, in material breach of the Indemnitors' joint and several obligations made under the Indemnity Agreement.

46.     XL, in its November 11, 2021 letter, also demanded that the Indemnitors provide XL with unrestricted access to the Indemnitors' financial statements, books, records, and accounts.

47.     By letter dated November 17, 2021, XL sent another letter to the Indemnitors wherein XL: (i) advised Indemnitors that Richfield supplied documents in support of its claim and "it appears that Richfield supplied materials to the Project and the amounts claimed are due and owing except for finance charges; and (ii) reiterated its demand that Indemnitors deposit collateral security. A true and accurate copy of XL's November 17, 2021 letter to the Indemnitors is attached hereto as **Exhibit E**.

48.     Between November 17, 2021 and the Thanksgiving holiday, XL attempted to resolve the matter with the Indemnitors without Court intervention, however, Indemnitors refused to provide XL adequate assurances and/or access to their books and records as required under the Indemnity Agreement.

49.     To date, the Indemnitors have failed to deposit collateral with XL and/or provide access to their financial statements, books, records, and accounts to XL, in material breach of the Indemnitors' joint and several obligations under the Indemnity Agreement.

## FIRST COUNT

### SPECIFIC PERFORMANCE OF THE INDEMNITY AGREEMENT TO ENFORCE XL'S DEMAND FOR COLLATERAL SECURITY AGAINST THE INDEMNITORS

50.     XL repeats each and every allegation set forth in the preceding paragraphs of its Verified Complaint as if set forth at length herein.

51.     Under the terms of the Indemnity Agreement, the Indemnitors agreed, among other things, to provide collateral as security for the full performance of the Indemnity Agreement.

52.     By way of letter dated November 11, 2021, XL requested that the Indemnitors deposit collateral with XL in the total amount of $2,000,000 in connection with the Depcom Termination and claim asserted by Richfield against the Depcom Payment Bond, and in anticipation of claims asserted by at least nine sub-subcontractors and vendors currently owed balances.

53.     Pursuant to Paragraph 8 of the Indemnity Agreement, the Indemnitors agreed, jointly and severally that:

> [XL] may, at any time and for any reason in its sole discretion, require the Indemnitors upon written notice to immediately procure the full release of the Bonds or deliver to [XL] collateral security in the form acceptable to [XL]. The collateral security will be in an amount equal to 100% of all undischarged liability under all Bonds, which liability shall be determined by [XL] as of the date of written notice. Indemnitors acknowledge that failure to deposit such funds with [XL] in accordance with this section shall cause irreparable harm for which [XL] has **no adequate remedy at law**. Indemnitors agree that [XL] shall be entitled to injunctive relief for specific performance of Indemnitors' obligation to deposit funds in accordance with this section and expressly waive and relinquish any claims or defenses to the contrary....

Ex. A at ¶ 8 (emphasis added).

54.     Despite demand, the Indemnitors have failed and refused to deposit collateral with XL as security for the full performance of the Indemnity Agreement.

55.     By reason of the foregoing breach of the Indemnity Agreement, XL has suffered, and will continue to suffer, injury and damage for which there is no adequate remedy at law.

**WHEREFORE,** XL demands judgment against all Indemnitors, jointly and severally, for specific performance as follows:

a. Restraining and enjoining the Indemnitors and their agents from transferring, encumbering, or otherwise disposing of and from concealing and secreting any of their property and assets, real, personal and mixed, whether jointly or solely owned, which might serve as collateral so as to secure XL from liability herein until proof of record satisfactory to the court is presented to establish that all claims to which XL is exposed have been liquidated and discharged:

b. Ordering and directing the Indemnitors, and each of them, and their officers, agents employees, attorneys and other persons acting on their behalf, immediately to deposit collateral in the amount of $2,000,000;

c. Requiring Indemnitors to render to XL a full and complete accounting of all assets owned by them or anyone or any of them in which they or any one of them may have an interest;

d. Requiring the Indemnitors to allow XL full and complete access to all financial books, records, documents and accounts maintained by them or any one of them in which they may have an interest

e. Awarding damages in an amount equal to any and all liability, loss, cost, expense, and attorney's fees incurred or to be incurred by XL as a result of its having executed the

Depcom Bonds and Monmouth Bonds (collectively, "Bonds"), together with the appropriate interest thereon; and

f.  Awarding interest, costs of suit, attorneys' fees and such other and further relief as may be just and equitable.

## SECOND COUNT

### SPECIFIC PERFORMANCE OF THE INDEMNITY AGREEMENT TO INSPECT BOOKS AND RECORDS AGAINST THE INDEMNITORS

56.  XL repeats each and every allegation set forth in the preceding paragraphs of its Verified Complaint as if set forth at length herein.

57.  Pursuant to the terms of the Indemnity Agreement, until XL's liability is discharged, the Indemnitors agreed, jointly and severally, that they "will provide the Surety or its designees access to all records, including all financial records, of the Indemnitors for the purposes of examining and copying same. Ex. A at ¶ 4.

58.  By letter dated November 11, 2021, XL demanded that Indemnitors provide XL with unrestricted access to the Indemnitors' financial statements, books, records, and accounts.

59.  To date, the Indemnitors have failed to provide access to their financial statements, books, records, and accounts to XL, in material breach of the Indemnitors' joint and several obligations under the Indemnity Agreement.

60.  Without full complete, and immediate access to all of the Indemnitors' books, records, and other documents, XL may be unable to determine the most effective means of otherwise minimizing its potential losses and pursuing its rights against the Indemnitors.

61.  By reason of the foregoing, XL has suffered and will continue to suffer injury and damage for which there is no adequate remedy at law.

**WHEREFORE**, XL demands judgment against the Indemnitors, jointly and severally, for specific performance as follows:

a.  Specifically enforcing the Indemnity Agreement by preliminarily and permanently enjoining, ordering, and directing the Indemnitors, and each of them, and their officers, agents, employees, attorneys and other persons acting on their behalf, immediately to provide to XL full and complete access to all of the Indemnitors' books, records, including electronic records similar to *Quickbooks* and other accounting software and documents for inspection and copying:

b.  Requiring the Indemnitors to render to XL a full and complete accounting of all assets owned by them or anyone or any of them in which they or any one of them may have an interest; and

c.  Awarding interest, costs of suit, attorneys' fees and such other and further relief as may be just and equitable.

## THIRD COUNT

## CONTRACTUAL INDEMNITFIACTION AGAINST THE INDEMNITORS

62.     XL repeats each and every allegation set forth in the preceding paragraphs of its Verified Complaint as if set forth at length herein.

63.     Pursuant to Paragraph 3 of the Indemnity Agreement, the Indemnitors agreed, jointly and severally, to:

> to exonerate, indemnify, hold harmless and keep indemnified [XL] from and against all demands, claims, losses, costs, liabilities, damages, and expenses including, without limitation, attorney's fees, expert's fees, interest, court costs, investigative expenses, document reproduction and storage charges (collectively the "Surety's Loss") which [XL] may sustain or incur by reason of the issuance of the Bonds or Indemnitors' failure to perform or comply

with any of the provisions of this Agreement or [XL] attempting to
obtain a release of or evidence of termination under such Bonds.

Ex. A at ¶ 3

64.   The Indemnitors have failed and refused to honor their obligations under the Indemnity Agreement to, among other things, indemnify XL for damages, losses, costs, liabilities, damages, and expenses (including but not limited to legal fees), and/or expenses that XL has and may incur, and have otherwise breached the Indemnity Agreement.

65.   As a result of the Indemnitors' breach of the Indemnity Agreement, XL has sustained damages, losses, costs, professional and consulting fees (including but not limited to legal fees), disbursements, interest, and/or expenses.

**WHEREFORE,** XL demands that judgment be entered against the Indemnitors, jointly and severally:

a.   for contractual indemnification for all damages, losses, costs, professional and consulting fees (including but not limited to legal fees), disbursements, interest, and/or expenses incurred and to be incurred by XL, and any and all damages, losses, costs, professional and consulting fees (including but not limited to legal fees), disbursements, interest, and/or expenses to be incurred by XL, together with appropriate interest thereon;

b.   for declaratory relief declaring the Indemnitors jointly and severally liable to XL for all damages, losses, costs, professional and consulting fees (including but not limited to legal fees), disbursements, interest, and/or expenses to which XL may be exposed or which it may sustain;

c.   for interest, costs of suit, attorneys' fees and such other and further relief as may be just and equitable.

## FIFTH COUNT

## EXONERATION AGAINST BCR

66.     XL repeats each and every allegation set forth in the preceding paragraphs of its Verified Complaint as if set forth at length herein.

67.     As between XL and BCR, XL is secondarily obligated under the Bonds, while BCR is primarily obligated under the Bonds, and otherwise owes a duty to XL to procure the discharge of all obligations arising under the Bonds.

68.     BCR has failed and refused, and continues to fail and refuse, to satisfy the obligations to XL arising under the Bonds.

69.     XL is entitled to be exonerated and indemnified by BCR for any and all loss incurred and to be incurred under the Bonds.

70.     As a result of BCR's failure to honor its obligations arising under the Bonds, XL has sustained and will continue to sustain damages.

**WHEREFORE**, XL demands that judgment be entered against BCR:

a.  For an Order requiring BCR to exonerate XL for any and all damages in an amount equal to any and all damages, losses, costs, professional and consulting fees (including but not limited to legal fees), disbursements, interest, and/or expenses incurred or to be incurred by XL, together with the appropriate interest thereon; and

b.  For interest, costs of suit, attorneys' fees and such other and further relief as may be just and equitable.

**FIFTH COUNT**

***QUIA TIMET* AGAINST THE INDEMNITORS**

71.     XL repeats each and every allegation set forth in the preceding paragraphs of its Verified Complaint as if set forth at length herein.

72.     XL anticipates that it may be required to make payments to various claimants to cure the defaults of BCR and the Indemnitors under the Bonds and the Indemnity Agreement.

73.     The continued failure of the Indemnitors to place XL with funds results in XL's continuous and increasing risk of loss under the Bonds.

74.     XL fears that unless the relief sought is granted, the Indemnitors may liquidate and otherwise dissipate their assets thereby ensuring that funds that ought to be applied to satisfy XL's obligations under the Bonds and the Indemnitors' obligations under the Indemnity Agreement will not be available at the conclusion of this litigation.

**WHEREFORE**, XL demands judgment against all Indemnitors, jointly and severally, as follows:

a.   Ordering and directing the Indemnitors to discharge any claims asserted against XL and to reimburse XL for any outlays which it may have had to make in connection therewith;

b.   Ordering and directing the Indemnitors, and each of them, and their officer, agents, employees, attorneys, and other persons acting on their behalf, immediately to deposit collateral in the amount of $2,000,000;

c.   Directing, ordering, and adjudging that pursuant to the common law doctrine of *quia timet*, the Indemnitors and their agents are restrained and enjoined from transferring, encumbering, or otherwise disposing of and from concealing and secreting any of their property and assets, real, personal and mixed, whether jointly

or solely owned, which might serve as collateral so as to secure XL from liability herein until proof of record satisfactory to the court is presented to establish that all claims to which XL is exposed have been liquidated and discharged;

d.  Requiring the Indemnitors to render to XL a full and complete accounting of all assets owned by them or anyone or any of them in which they or any one of them may have an interest;

e.  Requiring the Indemnitors to allow XL full and complete access to all financial books, records, documents and accounts maintained by them or any one of them in which they may have an interest;

f.  Awarding in favor of XL, and against the Indemnitors, damages in the amount of all expenditures, and outlays made by XL, including attorneys' fees, consultant's fees, litigation expenses, interest and court costs; and

g.  Awarding interest, costs of suit, attorneys' fees and such other and further relief as may be just and equitable.

## SIXTH COUNT

## COMMON LAW INDEMNIFICATION AGAINST BCR

75.     XL repeats each and every allegation set forth in the preceding paragraphs of its Verified Complaint as if set forth at length herein.

76.     As between XL and BCR under the Bonds, the liability of BCR to XL and any claimant(s) is primary and XL's liability is secondary.

77.     Accordingly, BCR should be required to pay any claims made on the Bonds and to place in XL's possession, funds or property sufficient to satisfy all such claims before XL is required to make payment thereon.

78.     Based on the foregoing, BCR should be required to pay any claims made against the Bonds issued by XL on behalf of BCR.

**WHEREFORE**, XL demands judgment against BCR as follows:

a.  For damages in the amount sufficient to indemnify XL from any and all liability, cost and expense incurred as a result of its having executed the Bonds, together with appropriate interest thereon;

b.  For an order declaring BCR liable to XL for any and all liability, loss, cost, expense and attorneys' fees incurred or to be incurred by XL as a result of its having executed the Bonds; and

c.  For reasonable attorneys' fees, cost of suit, and any other relief the Court deems just and proper.

## SEVENTH COUNT

## SUBROGATION AGAINST BCR

79.     XL repeats and re-avers each and every one of the allegations set forth in the preceding paragraphs of this Verified Complaint with the same force and effect as if each were fully set forth at length herein.

80.     To the extent that XL has, or will make, payments to extinguish BCR's debts arising from the Bonds, XL has, and will, become subrogated to the rights of, among others, those whom it has paid, or will pay in connection with the Bonds.

81.     As a result of BCR's failure to honor its obligations under the Bonds, XL has sustained damages and/or is likely to sustain damages.

**WHEREFORE**, XL respectfully demands judgment against BCR as follows:

a.  For subrogation in an amount equal to any payment made by XL on BCR's behalf

in connection with any bond issued by XL to BCR;

b.  For interest, costs of suit, attorneys' fees and such other and further relief as may

be just and equitable.

DATED: DECEMBER 1, 2021

TRIF AND MODUGNO, LLC
*Attorneys for Plaintiff,*
*XL Specialty Insurance Company*

_____
Kevin Brotspies
89 Headquarters Plaza
North Tower, Suite 1201
Morristown, New Jersey 07960
Telephone:  973-547-3611
Facsimile:  973-554-1220

## **VERIFICATION**

State of New Jersey                    )
                                       )
County of Morris                       )


Barry Huber, being duly sworn, deposes and says under penalty of perjury:

I am Global Practice Leader, of XL Specialty Insurance Company, the plaintiff in the within action, which is a corporation created under and by virtue of the laws of the State of Delaware; that I have read the foregoing Verified Complaint and know the contents thereof; that the same is true to the best of my knowledge, except as to the matters therein stated to be alleged upon information and belief, and that as to those matters I believe to be true.


Barry Huber


Sworn to me before this
1.st day of December, 2021


Notary Public

DONNA A. RAIA
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires 7/19/2024

22