IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| XL SPECIALTY INSURANCE COMPANY | * |
|     Plaintiff | * |
| v. | *   Civil Action No.: |
| |      1:21-cv-03068-GLR |
| BIGHORN CONSTRUCTION AND RECLAMATION, LLC, et al. | * |
| | * |
|     Defendants | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**DEFENDANTS' OPPOSITION TO EMERGENT MOTION FOR
TEMPORARY AND PRELIMINARY INJUNCTION**

Defendants Bighorn Construction and Reclamation, LLC, Bridgelink Engineering, LLC, Bridgelink Commodities, LLC, Bridgelink Investments, LLC, Bridgelink Development, LLC, Bridgelink Renewable Energy Investments LLC, Intermountain Electric Service, Inc., Bighorn Investments and Properties, LLC, (collectively, "Bighorn" or "Indemnitors"), by undersigned counsel and pursuant to Fed. R. Civ. P. 65, hereby file this opposition to Plaintiff XL Specialty Insurance Company's Emergency Motion for Temporary and Preliminary Injunction (the "Emergent Motion"), and state the following:

1. On December 1, 2021, XL Specialty Insurance Company (XL) filed a Verified Complaint and the Emergent Motion, in which it asked the Court to order each of the Defendant Indemnitors (all eleven of them), and their officers, agents, employees, attorneys and other persons acting on their behalf, to deposit collateral with XL in the amount of $2,000,000, or alternatively, enjoin and restrain Indemnitors, and each of them, and their officers, agents, employees, attorneys and other persons acting on their behalf from transferring, conveying, selling, encumbering, in any manner, any property or assets which are jointly or solely owned by the Indemnitors.  Complaint p. 1.

2. The Plaintiff filed this Motion in haste and without requisite knowledge of the outstanding liabilities to which the Defendants may ultimately be responsible for disputed claims on two separate construction projects. Upon closer inspection, XL significantly overstated the amounts in dispute and, at present is fully aware that many, if not all, of the outstanding claims are being paid and resolved in the ordinary course of business.

3. To the Plaintiff's credit, on December 7, 2021 it agreed to the filing of a joint motion to extend time for which Defendants would reply to its Motion for 30 days. This is telling because it not only indicated that there were and are questions regarding the actual amounts outstanding, but also undercut the very nature of the Emergent Motion.

**XL Failed to Demonstrate That It Is Entitled to Security In The Amount of $ 2 Million**

4. XL asserted that on a project defined as the "Depcom Project" (Compl. ¶ 25), Bighorn was retained as a subcontractor and XL provided payment and performance bonds. (*Id.* at ¶¶26-27.) XL then asserted that it was notified by Depcom that Depcom was aware of at least (9) sub-contractors and vendors that are owed balances from Bighorn that are past due." (*Id* at ¶30) XL went on to claim that "[a]ccording to the schedule of unpaid sub-contractors and vendors provided by Depcom, it appears that Bighorn owes its subcontractors and vendors more than $1,230,000." *Id.* at 31. These statements by XL are without merit and are demonstrably untrue based upon its own pleading.

5. In neither filing, the Verified Complaint nor the Emergent Motion, did XL substantiate how it was exposed to $1,230,000. There was no breakdown whatsoever of claims by subcontractors or vendors who have made claims against Bighorn totaling that amount. There was no detailed recitation or breakdown by XL included in its papers because XL is not, as it claims, legitimately exposed to $2 Million in claims.

6. XL may point the Court to the fact that it provided detail at ¶¶ 33 and 34 of the Verified Complaint indicating that a sub-subcontractor identified as Richfield Farms asserted a claim for $300,258.49. It may also point to another claimant identified as United Rentals, asserting a claim for $265,336.50. XL did not provide any other details of any other claims submitted on the Depcom Project and no details whatsoever on the results of any investigation it performed to determine why these claims have not been paid.

7. XL further alleged that it provided bonding on a project defined in the Verified Complaint as the "Monmouth Project". Neither the Verified Complaint nor the Emergent Motion mentions a single amount due to any specific subcontractor or material supplier on the Monmouth Project. Instead both the pleading and the Emergent Motion assert, in conclusory fashion, that "XL is exposed to liability under the Monmouth Performance Bond and has incurred, and will continue to incur, losses, costs and expenses, including attorneys' fees." Motion at 9.

8. A careful review of the pleading and motion reveal that XL has not provided any of the detailed information that it presumably possesses to support its claim that Defendants should each have to post $2 Million in collateral (resulting in $22 million in collateral from 11 different Defendants).

9. During the past thirty days, during the stay requested by the parties, Bighorn has been in near-constant contact with XL and Depcom to resolve the outstanding payment claims about which XL bases its Emergent Motion. During this time, Depcom agreed to pay, because it was contractually obligated to pay, a substantial portion of the claims asserted by Richfield. Bighorn, without waiving its rights against Depcom for the entire payment, has directly contributed to the satisfaction and resolution of all amounts outstanding to Richfield on the Depcom Project. These payments eliminated any further exposure to XL and significantly reduced any claim XL

may ultimately face on the Depcom Project. Thus, of the two (2) amounts that actually appear in the pleading and Motion, only the United Rentals claim of $300,528.49 remains.

10. The fact that Depcom, the General Contractor on the Depcom Project, is paying amounts due to sub-contractors and material suppliers requires further explanation. Although the XL Verified Complaint indicates that Bighorn removed its personnel from the Depcom Project, it fails to state why Bighorn took this extraordinary step.

11. Depcom failed to pay Bighorn for its work (and the work of its sub-subcontractors and suppliers) and that failure created an approximately $1.8 million receivable for Bighorn. XL has known throughout this time period that Bighorn has long overdue accounts receivable outstanding from Depcom on the Depcom Project totaling approximately $1.8 million and it is against this receivable that Depcom has tendered (and continues to tender) payments to sub-subcontractors and material suppliers.

12. At bottom, XL has not provided any support in this record for its extraordinary demand that Defendants post more that $22 million in collateral for claims that appear to be, at most several hundred thousand dollars and those amounts remain the center of disputes between Bighorn and Depcom on the Depcom Project. Moreover, given that Bighorn and Depcom continue working diligently and cooperatively to resolve outstanding payment claims, there is every indication that even these remaining payment claims will be resolved in the near term, rendering XL's extraordinary request for collateral moot.

13. To be successful, the movant must demonstrate that the harm requiring immediate action is 'neither remote nor speculative, but actual and imminent.'" *Seth v. McDonough*, 461 F. Supp. 3d 242, 263 (D. Md. 2020) (quoting *Direx Israel, Ltd. v. Breakthrough Medical Corp.,* 952 F.2d 802, 812 (4th Cir. 1991)). "'Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as

an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" *Id.* (quoting *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 22 (2008)). Here, XL cannot claim that after working with the Defendants for 30 days to significantly reduce outstanding claims that it will incur imminent harm and, as these matters are timely resolved, it may not be exposed to any claims. Frankly, the immediate past shows just the opposite.

14. What is clear is that the Plaintiff overestimated its damages, acted in haste filing an unsubstantiated Emergent Motion, and the joint request for a 30 day stay was mutually beneficial to both parties and has effectively and materially reduced the amounts of any outstanding claims.

**WHEREFORE**, the Defendants Bighorn Construction and Reclamation, LLC, Bridgelink Engineering, LLC, Bridgelink Commodities, LLC, Bridgelink Investments, LLC, Bridgelink Development, LLC, Bridgelink Renewable Energy Investments LLC, Intermountain Electric Service, Inc., Bighorn Investments and Properties, LLC respectfully request the Court deny the Plaintiff's Emergent Motion for Temporary and Preliminary Injunctions.

      /s/ Thurman W. Zollicoffer, Jr.
Thurman W. Zollicoffer, Jr. (Fed. Bar #23256)
Matthew S. Sturtz (Fed. Bar #08269)
Nelson Mullins Riley & Scarborough LLP
100 S. Charles Street, Suite 1600
Baltimore, Maryland 21201
Thurman.zollicoffer@nelsonmullins.com
Matt.sturtz@nelsonmullins.com
443-392-9419 (telephone)
443-392-9499 (facsimile)

*Attorneys for Defendants*
*Defendants Bighorn Construction and Reclamation, Bridgelink Engineering, LLC, Bridgelink Commodities, LLC, Bridgelink Investments, LLC, Bridgelink Development, LLC, Bridgelink Renewable Energy Investments, LLC, Intermountain Electric Service, Inc., Bighorn Investments and Properties, LLC*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing was served upon all counsel of record via ECF electronic filing on this 10th day of January, 2022.

                                               */s/ Thurman W. Zollicoffer, Jr.*
                                               Thurman W. Zollicoffer, Jr.