## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| XL SPECIALTY INSURANCE COMPANY, | Civil Action No. 1:21-cv-03068-GLR |
| Plaintiff, | |
| v. | |
| BIGHORN CONSTRUCTION AND RECLAMATION, LLC, BRIDGELINK ENGINEERING, LLC, BRIDGELINK COMMODITIES, LLC, BRIDGELINK INVESTMENTS, LLC, BRIDGELINK DEVELOPMENT, LLC, BRIDGELINK RENEWABLE ENERGY INVESTMENTS LLC, INTERMOUNTAIN ELECTRIC SERVICE, INC.,  BIGHORN INVESTMENTS AND PROPERTIES, LLC, COLE W. JOHNSON, CORD H. JOHNSON, CASSIE J. HAMILTON | |
| Defendants. | |

## XL SPECIALTY INSURANCE COMPANY'S MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR TEMPORARY AND PRELIMINARY INJUNCTIONS

Plaintiff, XL Specialty Insurance Company ("XL"), by and through counsel, submits this memorandum of law in further support of its Emergent Motion for Temporary and Preliminary Injunctions.

1

## PRELIMINARY STATEMENT

Defendants, Bighorn Construction and Reclamation, LLC ("BCR"), Bridgelink Engineering, LLC, Bridgelink Commodities, LLC, Bridgelink Investments, LLC, Bridgelink Development, LLC, Bridgelink Renewable Energy Investments LLC, Intermountain Electric Service, Inc., Bighorn Investments and Properties, LLC, Cole W. Johnson, Cord H. Johnson and Cassie J. Hamilton (collectively, "Indemnitors") do not (because they cannot) dispute that they are contractually and legally required to deposit collateral security with XL Specialty Insurance Company ("XL") immediately upon demand in connection with any claim asserted under the bonds that XL issued, as surety, on behalf of BCR, as principal.[1]   The Corporate Indemnitors also do not (and cannot) dispute that: (i) XL received numerous claims against bonds issued by XL on behalf of BCR ("Bonds"); (ii) XL demanded that Indemnitors deposit collateral security with XL to secure it from liability under such claims; and (iii) the Corporate Indemnitors completely ignored XL's demand for collateral security.

---

[1] On December 16, 2021, individual Indemnitor, Cole W. Johnson, was served with a copy of the Verified Complaint, with exhibits, and Motion Papers at his place of residence by process server. Cole W. Johnson has not interposed an Answer in this action, nor has he contacted counsel for XL. On December 1, 2021, Cord Johnson – whose wife is Cassie J. Hamilton – was electronically mailed a copy of XL's Verified Complaint and Motion papers.  On January 15, 2022, Cassie J. Hamilton was served by personal service.  Ultimately, despite receiving notice of the Verified Complaint and Motion, none of the individual indemnitors have responded to XL's allegations against them.

Because they cannot dispute these dispositive facts, which entitle XL to the temporary and preliminary injunctions that it seeks, the Indemnitors instead: (i) dispute the amount and basis for XL's exposure; (ii) tout their limited involvement in resolving certain claims during the agreed-upon thirty (30) day stay; and (iii), disingenuously contend that XL's harm is not irreparable because it consented to the thirty (30) day stay.

The Indemnitors' arguments are baseless because: (i) XL provided (and continues to provide) the Corporate Indemnitors all documentation that XL received from the numerous bond claimants who, collectively, have filed claims valued at no less than $1.4 million; (ii) the three (3) claims that were resolved (which Indemnitors attribute as their own successes) were resolved almost entirely through joint check payments from the project owner without any significant contribution by BCR; (iii) the Indemnitors expressly acknowledged, in the Joint Motion to Continue, that XL was not waiving its argument that it currently faces, and will continue to face, irreparable harm as a result of the undisputed claims that were filed against the Bonds; and (iv) during the thirty (30) day stay, eight (8) additional claims were filed against the Bonds and none of these claims have been resolved by Indemnitors.

Accordingly, as the need for emergent relief is clear, XL respectfully requests that the injunctive relief sought herein be granted.

## REPLY ARGUMENT

### POINT I

**THE INDEMNITORS ADMIT THAT THEY ARE BOUND BY THE TERMS OF THE INDEMNITY AGREEMENT WHICH OBLIGATES THEM TO DEPOSIT COLLATERAL SECURITY WITH XL IN CONNECTION WITH THE CLAIMS THAT XL RECEIVED UNDER THE BONDS**

The Indemnitors do not (and cannot) dispute that they are legally bound by the terms of the Indemnity Agreement which obligates them to deposit collateral security with XL in connection with the claims that XL received under the Bonds.

There is no doubt that courts – including this District – routinely uphold a surety's right to specific performance of a collateral security clause in an indemnity agreement. American Motorists Ins. Co. v. United Furnace Co., 876 F.2d 293, 302 (2d Cir. 1989) (specifically enforcing collateral security provision by holding that a surety was entitled to summary judgment on its claim for collateral security under the terms of its indemnity agreement with the principal); United States Fidelity & Guaranty Co. v. J United Electrical Contracting Corp., 62 F. Supp. 2d 915, 921-22 (E.D.N.Y. 1999) (granting summary judgment on surety's claim for specific performance of collateral security provision); Employers Ins. of Wausau v. Bond, 1991 U.S. Dist. LEXIS 951 (D. Md. 1991) (noting that "a surety may sue for specific performance for deposit of security to cover the surety's reserve if such a provision is found in the indemnity agreement"); BIB Constr. Co., Inc., v. Fireman's Ins. Co. of

4

Newark NJ, 214 A.D.2d 521 (N.Y. App. Div. 1995) (reversing denial of surety's summary judgment motion and holding that surety was entitled to specific performance of collateral security provision under terms of an indemnity agreement); Prestige Decorating & Wallcovering, Inc. v. US Fire Ins. Co., 2007 WL 5555819 (NY. Sup. Ct. May 10, 2007), aff'd, 49 A.D.3d 406 (N.Y. App. Div. 2008) (holding surety entitled to summary judgment for specific performance of collateral security provision in indemnity agreement); Travelers Cas. & Sur. Co. of Am. v. C.R. Calderon Constr., Inc., 2017 U.S. Dist. LEXIS 77469, 17 (D. Md. May 22, 2017) (granting preliminary injunction and ordering indemnitor to post collateral security in accordance with the terms of the indemnity agreement); Berkley Reg'l Ins. Co. v. Murray, 2016 U.S. Dist. LEXIS 6684 (D. Md. January 20, 2016) (granting surety's motion for specific performance of collateral security obligation in indemnity agreement).

The Indemnitors also do not (and cannot) dispute that a surety's loss of its right to specific performance of a collateral security provision cannot be adequately remedied by money damages and, absent immediate relief, XL's right to receive collateral will be rendered hollow and meaningless. See Eakin v. Cont'l Illinois Nat'l Bank & Trust Co. of Chicago, 121 F.R.D. 363, 366 (N.D. Ill. 1988) (noting that without obtaining specific performance of collateral security obligations, surety would forever lose these rights); C.R. Calderon Constr., Inc., 2017 U.S. Dist. LEXIS 77469, 14-15 (noting that "[m]oney damages are inadequate here, because they cannot

compensate [surety] for unduly bearing this risk of non-payment and the loss of its bargained-for security position' as compared to other creditors"); <u>Developers Sur. & Indem. Co. v. Bi-Tech Const., Inc.</u>, 964 F. Supp. 2d 1304, 1310 (S.D. Fla. 2013) ("Absent an injunction, [the surety] would suffer the harm of having its rights under the Indemnity Agreement effectively nullified. [The surety] would be unsecured against claims and loss while [the indemnitors] would be free to sell, transfer, or conceal their assets to avoid their obligations.").

Here, the Indemnitors admit that they executed the Indemnity Agreement which requires them to:

> exonerate and indemnify [XL], to place [XL] in immediately available funds, in a form and amount deemed acceptable in the [XL]'s sole discretion, when requested to do so in order to meet and satisfy any claim, reserve established by [XL], or demand made upon [XL] under the Bonds (whether or not such claims or demands are contested by Indemnitors before [XL] shall be required to make payment under the Bonds).

> [Verified Complaint at ¶ 21, Ex. A at ¶ 5.]

Corporate Indemnitors also do not (and cannot) dispute that: (i) XL received numerous claims against the Bonds; (ii) XL demanded that the Indemnitors deposit collateral with XL in the amount of $2 million to secure XL from liability with respect to the claims (and anticipated claims); and (iii) the Indemnitors ignored XL's demand and refused to deposit collateral with XL as required.

During the thirty (30) day stay, the parties had several conversations with the owner of the Depcom Project, Depcom Power, Inc. ("Depcom"), about disputed amounts withheld from BCR for work performed by claimants on the Depcom Project. As a result of these discussions, Depcom agreed that, for those claimants whose work it did not already pay BCR, it would agree to pay these claimants directly via joint check.[2]  The parties were able to resolve the following three (3) claims against the Bonds (See Declaration of Barry Huber ("Huber Dec.") at ¶¶ 31-36):

| Claimant | Claim Amount | Resolution |
|---|---|---|
| Bennett, Brewer | $134,100.00 | Claim resolved entirely by joint check payment without any contribution by BCR. |
| Richfield | $300,528.49 | Claim resolved by joint check with BCR paying $16,234.49 balance. |
| United Rentals (MD70) | $265,636.50 | Claim resolved by Depcom agreeing to pay joint check of $148,707 with XL paying $116,929.50 balance. |

During the thirty (30) day stay, XL also received additional claims against the Depcom Payment Bond. Huber Dec. at ¶¶ 4-11; 22-27.  The following table identifies

---

[2] A joint check payment is a payment made directly from a General Contractor to its subcontractor's suppliers/vendors, with authority of its subcontractor, where such payment are deducted against amounts owed to the subcontractor and its suppliers/vendors.  A joint check arrangement is intended to mitigate against the risk of double payment.

the currently unresolved claims on the Depcom Project and extent to which Depcom

will agree to make payments towards these claims via joint check:

| Claimant | Claim Amount | Depcom Joint Check | Remaining Exposure After Joint Check |
|---|---|---|---|
| Ferguson Ent. | $147,764.83 | $0 | $147,764.83 |
| DOZR | $222,475.20 | $154,520 | $67,955.00 |
| Willard Agri-Service | $15,971.97 | $0 | $15,971.97 |
| William Hunter Wessells and Mac Farms, Inc. | $88,200.00 | $0 | $88,200.00 |

Total   **$319,891.80**

In addition to the above-referenced unresolved claims on the Depcom Project,

the following claims are also pending against the bonds ("Monmouth Bonds") that

XL issued, as surety, on behalf of Bighorn, as principal, on the Monmouth Solar

Project ("Monmouth Project"):

| Claimant | Claim Amount |
|---|---|
| White Cap L.P. | $11,145.19 |
| United Rentals | $64,947.86 |
| MYR Energy Services | $150,000 + |
| Milton Rentals | $47,427.93 |

Total   **$278,520.98**

Unlike the Depcom Project, XL does not anticipate that it will be able to resolve

all/portions of these claims via joint checks because the Monmouth Project owner,

MYR Energy Services ("MYR"), filed its own performance bond claim and indicated

that it expects to incur costs of $150,000 above that remaining on the contract balance.

8

To that end, XL's current exposure on the Monmouth Bonds is $278,520.98.  Between both projects, XL's current exposure is $598,412.78.

Based on this information, XL proposed to resolve this motion with the Indemnitors by reducing its collateral demand to $598,412.78 and asking that Indemnitors deposit that amount with XL.  Despite the reasonableness of this demand, the Indemnitors refused.

Based on XL's current level of exposure, XL respectfully requests that the Court apply the well-settled law to the admitted facts and require the Indemnitors to deposit collateral security with XL in the revised amount of $598,412.78 plus another $100,000 for potential additional unfiled claims against the Bonds and to compensate XL for its attorneys' fees and cost in connection with the claims.[3]

## POINT II

**THE INDEMNITORS' ARGUMENT THAT XL OVERSTATED ITS DEMAND FOR COLLATERAL OVERLOOKS THE ABSOLUTE DISCRETION THEY AFFORDED XL TO MAKE SUCH DEMAND, THE NUMEROUS ADDITIONAL CLAIMS, AND ANTICIPATED CLAIMS, XL HAS RECEIVED SINCE FILING THIS ACTION, AND XL'S AGREEMENT TO REDUCE ITS DEMAND BASED ON CURRENT LEVEL OF EXPOSURE**

The Indemnitors' suggestion that XL overstated its demand for collateral security ignores: (i) the absolute discretion that they afforded XL to make such

---

[3] Enclosed with this Reply Brief is a revised form of Order.

demand; (ii) the more than $759,078.17 worth of additional claims that XL received after it filed its Verified Complaint; (iii) the likely prospect that more claims against the Bonds will be received by XL in the near future; and (iv) XL's agreement to reduce its demand to meet its current level of exposure.

XL demanded that the Indemnitors deposit $2 million in collateral with XL pursuant to the terms of the Indemnity Agreement after it learned that: (i) BCR was terminated by Depcom on the Depcom Project, thereby exposing XL to a claim under the Depcom Performance Bond [Verified Complaint at ¶ 32]; (ii) BCR owed its subcontractors and vendors more than $1,230,000 on the Depcom Project [id. at ¶ 31]; (iii) Richfield Farms LLC ("Richfield") filed a claim against the Depcom Payment Bond for $300,258.49 [id. at ¶ 33]; (iv) United Rentals filed a claim against the Depcom Payment Bond for $265,336.50 [id. at ¶ 34]; and (v) MYR Energy Services, Inc. ("MYR") had issued a Notice of Default to BCR on the Monmouth Project, thereby exposing XL to a claim against the Monmouth Performance Bond. Id. at ¶¶ 40-41.

Upon receiving this information, XL determined that it was initially exposed for approximately $2 million and demanded security from the Corporate Indemnitors to secure it from liability and the potential loss, costs and expenses (including attorneys' fees) it would incur as a result of the claims, and potential future claims, against the Bonds. By executing the Indemnity Agreement, the Indemnitors afforded

XL this discretion when they agreed "to place [XL] in immediately available funds, in a form and amount deemed acceptable **in [XL's] sole discretion**, when requested to do so in order to meet and satisfy any claim." Id. at ¶ 21 (emphasis added).  Courts, applying similar language, readily afford such discretion to the surety and do not require that they surety detail its method for calculating its demand amount.  See Int'l Fid. Ins. Co. v. Kerri A. Noyes Constr., 2018 LEXIS 65432 at * (S.D. Fla. April 17, 2018) (stating that surety "had no obligation" to expressly detail its method of calculating its collateral sought because, under the Indemnity Agreement, the surety "could determine the amount of any demand in its sole discretion"); W. Sur. Co. v. Mooney Constr., Inc., 574 F. App'x 865, 868 (dismissing indemnitor's argument that surety "failed to provide calculations as to how it arrived at the collateral" because surety "was not contractually obligated to do so" and could "determine the amount of collateral in its discretion").

Ultimately, XL's discretionary demand of $2 million in collateral security proved reasonable as, since filing this matter, XL has received $759,078.17 in additional claims against the Bonds, all of which remain unresolved.  The following table identifies each of these currently unresolved claims which were filed after XL filed its Verified Complaint in this action (Huber Dec. at ¶¶ 4-27):

| Claimant | Claim Type | Project | Amount |
|----------|------------|---------|--------|
| Ferguson Ent. | Payment Bond Claim | MD70 | $147,764.83 |

| | | | |
|---|---|---|---|
| DOZR | Notice of intent to Lien | MD70 | $222,475.20 |
| White Cap L.P. | Lien | Monmouth | $11,145.19 |
| United Rentals | Payment Bond Claim | Monmouth | $64,947.86 |
| Willard Agri-Service | Payment Bond Claim | MD70 | $15,971.97 |
| William Hunter Wessells and Mac Farms, Inc. | Payment Bond Claim | MD70 | $88,200.00 |
| Milton Rentals | Payment Bond Claim | Monmouth | $47,427.93 |
| MYR Energy Svs. | Performance Bond Claim | Monmouth | $150,000 + |
| | | **TOTAL** | **$759,078.17** |

Given that these significant claims were filed within the last weeks, it is expected that XL will receive additional claims against the Bonds which will only increase its exposure. Even still, XL reasonably offered to reduce its collateral demand to match its current exposure ($598,412.78) but the Indemnitors refused.

To that end, the Indemnitors cannot possibly challenge the reasonableness of XL's collateral demand because: (i) they afforded XL sole discretion to determine such demand; (ii) additional claims continue to be filed (and more are expected), only increasing XL's exposure; and (iii) XL reasonably agreed to reduce its demand to the level of its current exposure (taking into consideration Depcom's willingness to issue joint checks).

## POINT III

## XL PROVIDED, AND CONTINUES TO PROVIDE, THE INDEMNITORS ALL DOCUMENTATION TO SUBSTANTIATE THE CLAIMS AGAINST THE BONDS

The Indemnitors' contention that XL did not substantiate its exposure is belied by XL's consistent and repeated transmission of the relevant claim documents to the Corporate Indemnitors throughout the claim handling process.[4]  Indeed, the following table describes XL's efforts to provide the Corporate Indemnitors with the supporting claim documentation for each claim asserted against the Bonds (Huber Dec. ¶¶ 4-36):

| Claimant | Claim Amount | Project | XL Correspondence |
|---|---|---|---|
| Bennett, Brewer | $134,100.00 | MD70 | XL discussed claim with BCR on 12/6/21. Claim resolved entirely by joint check payment without any contribution by BCR. |
| Richfield | $300,528.49 | MD70 | XL forwarded claim and supporting documents to BCR on 12/6/21.  Claim resolved via joint check with BCR paying $16,234.49 balance. |
| United Rentals | $265,636.50 | MD70 | XL forwarded claim and supporting documents to counsel on 12/6/21.   XL waited but did not receive a response from BCR. Claim resolved by joint check payment without any contribution by BCR. |

---

[4] If the Court requests it, XL will provide copies of the relevant claims and supporting documentation for its review.

| | | | |
|---|---|---|---|
| Ferguson Ent. | $147,764.83 | MD70 | XL forwarded claim to BCR on 12/7/21. XL forwarded supporting documentation for claim on 1/6/22. XL is awaiting response from BCR. |
| DOZR | $222,475.20 | MD70 | XL forwarded notice of intent to file lien to BCR on 12/7/21.  XL is awaiting response from BCR. |
| White Cap L.P. | $11,145.19 | Monmouth | XL forwarded lien to BCR on 12/8/21.  XL is awaiting response from BCR. |
| United Rentals | $64,947.86 | Monmouth | XL forwarded claim and supporting documents to BCR on 12/16/21. XL is awaiting response from BCR. |
| MYR Energy Services | $150,000.00 | Monmouth | XL forwarded performance bond claim to BCR with supporting documents on 12/16/21.  XL is awaiting response from BCR. |
| Willard Agri-Service | $15,971.97 | MD70 | XL forwarded claim to BCR on 1/3/22.  XL is awaiting a response from BCR. |
| William Hunter Wessells and Mac Farms, Inc. | $88,200.00 | MD70 | XL forwarded claim to BCR on 1/14/22.  XL is awaiting a response from BCR. |
| Milton Rentals | $47,427.93 | Monmouth | XL forwarded notice of lien to BCR on 1/17/21. XL is awaiting a response from BCR. |

**TOTAL**        **$1,400,770.04**

Accordingly, there can be no argument that XL did not substantiate its basis for its collateral demand or that the Indemnitors do not understand the basis for these claims.

## POINT IV

## THE CORPORATE INDEMNITORS GROSSLY OVERSTATE THEIR EFFORTS TO RESOLVE OUSTANDING CLAIMS AGAINST THE BONDS

The Indemnitors exaggerate their "efforts" to assist XL in resolving the claims against the Bonds.  Indeed, between the time this action was initiated until now, the following three (3) claims, collectively valued at $700,264.99, were resolved with BCR only agreeing to contribute $16,234.49 towards their resolution (Huber Dec. at ¶¶ 31-36):

| Claimant | Claim Amount | Resolution |
|---|---|---|
| Bennett, Brewer | $134,100.00 | Claim resolved entirely by joint check payment without any contribution by BCR. |
| Richfield | $300,528.49 | Claim resolved by joint check with BCR paying $16,234.49 balance. |
| United Rentals (MD70) | $265,636.50 | Claim resolved by Depcom agreeing to pay joint check of $116,929.50 with XL paying $148,708 balance. |

Accordingly, the Indemnitors' effort and involvement in resolving these claims was minimal, at best.

## POINT V

## XL CONTINUES TO FACE IRREPARABLE HARM IF ITS MOTION IS NOT GRANTED AND THE PROSPECT OF SUCH HARM REMAINS DESPITE THE THIRTY DAY STAY

The Indemnitors' argument that XL's agreement to the stay this matter undermined the irreparable harm that it faces if unfortunate.  Indeed, XL specifically agreed to the thirty (30) day stay after the Indemnitors represented that they would use the time to "work collaboratively through the amounts in controversy and arrive at a mutual understanding of the amounts claimed under the bonds and satisfaction of third-party claims under the bonds."  See Letter to the Court from the Corporate Indemnitors' Counsel dated December 8, 2021.  Based on that agreement, XL believed – based on the Indemnitors' representations – that it would be the best use of resources to resolve this matter. As part of the motion to effectuate the stay, the parties both agreed that:

> All counsel understand that, while XL is agreeing to suspend Defendants' response deadlines and engage in a collaborative process to resolve claims, it is doing wo without waiving its argument that it currently faces immediate and irreparable harm as a result of those claims currently filed, and that XL will continue to suffer immediate and irreparable harm if it is unable to resolve all pending and future claims during the collaborative process.

> [See Joint Motion to Continue dated December 8, 2021 at ¶ 6.]

16

Accordingly, XL agreed to the stay in good faith and to use the resources available to Indemnitors to resolve the claims against its Bonds, while reserving all rights with respect to its Motion (including its argument that it currently faces irreparable harm).  Unfortunately, as set forth above, over $700,000 in additional claims were filed during the stay (all of which remain unresolved) and, while certain claims were resolved, the Indemnitors only contributed $16,234.49 to resolve same. To that end, XL remains significantly exposed under the Bonds and the harm that it faces if the Indemnitors do not secure it from such liability is immediate and irreparable. See Eakin, 121 F.R.D. at 366  (noting that without obtaining specific performance of collateral security obligations, surety would forever lose these rights); C.R. Calderon Constr., Inc., 2017 U.S. Dist. LEXIS 77469, 14-15 (noting that "[m]oney damages are inadequate here, because they cannot compensate [surety] for unduly bearing this risk of non-payment and the loss of its bargained-for security position' as compared to other creditors").

### POINT VI

**THE INDEMNITORS DO NOT DISPUTE THAT THEY ARE OBLIGATED TO PROVIDE XL WITH ACCESS TO THEIR BOOKS AND RECORDS**

The Indemnitors do not dispute, and thereby admit, that they are obligated to provide XL with access to their books and records.   To that end, the Court should

specifically enforce Paragraph 4 of the Indemnity Agreement and require that the Corporate Indemnitors provide XL with such access. See Hartford Casualty Ins. Co. v. Cal-Tran Assocs., Inc., 2008 U.S. Dist. LEXIS 71736 (D.N.J. Sept. 4, 2008) (enforcing surety's right to inspect books and records pursuant to terms of indemnity agreement); Eastland Const. Inc., 2009 N.Y. Misc. LEXIS 4167 (interpreting indemnity agreement and ordering indemnitors to provide surety with immediate access to books and records); Travelers Casualty & Surety Co. of Am. v. J.O.A. Constr. Co., 2009 U.S. Dist. LEXIS 30553 (E.D. Mich. Mar. 31, 2009) (ordering indemnitors to provide surety with immediate access to books, records, and accounts); U.S. v. JMG Excavating & Constr. Co., Inc., 2004 U.S. Dist. LEXIS 13334 (D. Me. Jul. 16, 2004) (upholding a provision in an indemnity agreement stating that "the Surety shall have right of free access to the books, records, and accounts of the [Indemnitors] for the purpose of examining and copying them"); RLI Ins. Co. v. Commercial Money Center, Inc., 2002 U.S. Dist. LEXIS 29232 (S.D. Cal. Jun. 6, 2002) (upholding a provision in an indemnity agreement that provided that indemnitor was required to make all accounting books and records available to surety); Colonial Sur. Co. v. A&R Capital Assocs., 420 F. Supp. 3d 38 (E.D.N.Y. 2017) (noting that "Courts have enforced similar provisions in indemnity agreements, requiring indemnitors to provide a surety with access to their books and financial records.").

## <u>CONCLUSION</u>

Without injunctive relief, XL will only win a pyrrhic victory when it undoubtedly, but eventually, prevails on its claims for equitable and contractual relief because, by that time, the Indemnitors will be unable to provide the funds that will furnish the *quia timet* and exoneration relief. For the foregoing reasons, XL respectfully requests that the Court grant the relief sought in the revised proposed order with temporary restraints and mandatory injunction submitted herewith.

DATED: January 24, 2022                              TRIF AND MODUGNO, LLC
                                                                         *Attorneys for Plaintiff*
                                                                         *XL Specialty Insurance Company*


                                                                         _____
                                                                         Kevin Brotspies, Esq.
                                                                         89 Headquarters Plaza
                                                                         North Tower, Suite 1201
                                                                         Morristown, New Jersey 07960
                                                                         Telephone: 973-547-3611
                                                                         Facsimile: 973-554-1220