# TRIF & MODUGNO
## ATTORNEYS AT LAW

**Kevin S. Brotspies**
kbrotspies@tm-firm.com

May 6, 2022

**Via Electronic Filing**
The Honorable Brendan A. Hurson. U.S.M.J.
101 West Lombard Street
Baltimore, Maryland 21201

     **RE:** **XL Specialty Insurance Company v. Bighorn Construction and Reclamation, LLC et al**
        **Case Number 1:21-cv-3068**

Dear Judge Hurson:

  We represent Plaintiff, XL Specialty Insurance Company ("XL"), in the above referenced matter. Pursuant to Your Honor's Order, dated April 22, 2022, we provide the following supplemental letter brief in further support of XL's Emergent Motion for Temporary and Preliminary Injunctions ("Motion").

  As set forth herein, Defendants remain obligated to immediately deposit collateral security with XL in an amount no less than $500,647.95 because XL remains exposed to undischarged liability in that amount. Separately, discovery will only obviate XL's need to inspect Defendants' books and records if Defendants agree to timely produce such documentation without objection during the disclosure process. Absent such agreement, XL will require an order from the Court compelling same. Lastly, the upcoming settlement conference should have no impact on the Motion because XL has established its entitlement to collateral from Defendants.

**I.** **XL's Current Request for Collateral from Defendants is $500,647.95, Which Amount is Equal to the Current Unresolved Bond Claims Plus a Reasonable Approximation of the Costs and Fees XL Will Incur in Connection With Same**

  At this time, XL is exposed to claims against the bonds ("Bonds") issued by XL on behalf of Bighorn Construction and Reclamation, LLC ("BCR") in the total amount of $450,647.95. XL's current exposure is calculated by adding the following unresolved claims against the Bonds (for which no release has been provided to XL), excluding any funds retained by the project owner that may be available to resolve the claims:[1]

---

[1] The project owner on the MD70 Project, Depcom Power, Inc. ("Depcom"), did not pay certain of BCR's invoices after disputes arose over BCR's performance of work on the MD70 Project. To

| **NEW JERSEY** | **NEW YORK** | **PENNSYLVANIA** |
|---|---|---|
| 89 Headquarters Plaza | 811 Broadway | 1700 Market Street |
| North Tower, Suite 1201 | Suite 615 | Suite 1005 |
| Morristown, New Jersey 07960 | New York, New York 10004 | Philadelphia, Pennsylvania 19103 |
| 973-547-3611, | 917-477-2999 | 267-869-0050 |
| Facsimile: 973-554-1220 | Facsimile: 973-554-1220 | Facsimile: 267-869-0051 |

www.tm-firm.com

| Claimant | Claim Amount | Retained Funds Available to Claimant | Total Exposure |
|---|---|---|---|
| DOZR | $222,475.20 | $154,520.00 | $67,966.00 |
| Willard Agr-Service | $15,971.97 | $0 | $15,971.97 |
| William Hunter Wessells and Mac Farms, Inc. | $88,200.00 | $0 | $88,200.00 |
| White Cap L.P. | $11,145.19 | $0 | $11,145.19 |
| United Rentals | $64,947.86 | $0 | $64,947.86 |
| MYR Energy Services[2] | $150,000+ | $0 | $150,000 |
| Milton Rentals | $47,427.93 | $0 | $47,427.93 |
| | | **TOTAL** | **$450,647.95** |

See Declaration of Barry Huber dated January 24, 2022 ("Huber Dec") at ¶¶ 4-6; 12-30.

Separately, XL's "undischarged liability" includes an additional $50,000 to account for: (i) the reasonable likelihood that MYR's claim exceeds $150,000; (ii) the reasonable probability that additional claims are brought against the Bonds; and (iii) the additional costs and attorneys' fees XL will incur to resolve the currently pending and future claims against the Bonds. XL is entitled to seek this additional $50,000 as "undischarged liability" because, under Paragraph 3 of the Indemnity Agreement, Indemnitors agreed that XL's liabilities include "without limitation, attorney's fees, expert's fees, interest, court costs, investigative expenses, document reproduction and storage costs." See Verified Complaint at Ex. A, ¶ 3. Given that these prospective liabilities are currently unknown and undischarged, XL is entitled to make a reasonable approximation of these amounts.

Indeed, by executing the Indemnity Agreement, the Indemnitors afforded XL absolute discretion when they agreed "to place [XL] in immediately available funds, in a form and amount deemed acceptable **in [XL's] sole direction**, when requested to do so in order to meet and satisfy any claim." Id. at ¶ 21 (emphasis added). Courts, applying similar language, readily afford such discretion to the surety and do not require that they surety detail its method for calculating its demand amount. See Int'l Fid. Ins. Co. v. Kerri A. Noyes Constr., 2018 LEXIS 65432 at *32 (S.D. Fla. April 17, 2018) (stating that surety "had no obligation" to expressly detail its method of

---

the extent the claimants' claims arise from invoices that Depcom withheld from BCR, Depcom and BCR have agreed to release the undisputed amounts withheld from BCR's subcontractors via joint check to resolve all or a portion of these claims.

[2] XL notes that MYR Energy Service's ("MYR") claim is against the performance bond that XL issued, as surety, on behalf of BCR, as principal, on the Monmouth Project. Given that MYR is still completing BCR's work on the Monmouth Project, the full amount of MYR's claim is unknown. However, MYR has repeatedly advised that its cost to complete the Monmouth Project will exceed $150,000. Huber Dec. at ¶ 19. XL reserves its right to seek additional collateral from Defendants to the extent MYR's claim exceeds $150,000.

calculating its collateral sought because, under the Indemnity Agreement, the surety "could determine the amount of any demand in its sole discretion"); W. Sur. Co. v. Mooney Constr., Inc., 574 F. App'x 865, 868 (11th Cir. 2014) (dismissing indemnitor's argument that surety "failed to provide calculations as to how it arrived at the collateral" because surety "was not contractually obligated to do so" and could "determine the amount of collateral in its discretion").

XL also notes that Depcom has indicated that it would likely have a claim against the performance bond that XL issued, as surety, on behalf of BCR, as principal, for the benefit of Depcom, as obligee, on the MD70 Project. At this time, Depcom has not given XL any indication regarding the amount that such a claim (if asserted) would be. To that end, XL reserves its right to amend its request for collateral if (or when) Depcom asserts such claim and provides XL with the amount that such claim would seek.

## II. Discovery Will Only Obviate XL's Need to Inspect Defendants' Books and Records if Defendants Agree to Timely Produce Such Documentation Without Objection During the Disclosure Process

There is no question that XL is entitled to inspect Defendants' books and records. See Hartford Casualty Ins. Co. v. Cal-Tran Assocs., Inc., 2008 U.S. Dist. LEXIS 71736 (D.N.J. Sept. 4, 2008) (enforcing surety's right to inspect books and records pursuant to terms of indemnity agreement); Colonial Sur. Co. v. Eastland Const. Inc., 2009 N.Y. Misc. LEXIS 4167 (Sup. Ct. Aug. 3, 2009)(interpreting indemnity agreement and ordering indemnitors to provide surety with immediate access to books and records); Travelers Casualty & Surety Co. of Am. v. J.O.A. Constr. Co., 2009 U.S. Dist. LEXIS 30553 (E.D. Mich. Mar. 31, 2009) (ordering indemnitors to provide surety with immediate access to books, records, and accounts); U.S. v. JMG Excavating & Constr. Co., Inc., 2004 U.S. Dist. LEXIS 13334 (D. Me. Jul. 16, 2004) (upholding a provision in an indemnity agreement stating that "the Surety shall have right of free access to the books, records, and accounts of the [Indemnitors] for the purpose of examining and copying them"); RLI Ins. Co. v. Commercial Money Center, Inc., 2002 U.S. Dist. LEXIS 29232 (S.D. Cal. Jun. 6, 2002) (upholding a provision in an indemnity agreement that provided that indemnitor was required to make all accounting books and records available to surety); Colonial Sur. Co. v. A&R Capital Assocs., 420 F. Supp. 3d 38 (E.D.N.Y. 2017) (noting that "Courts have enforced similar provisions in indemnity agreements, requiring indemnitors to provide a surety with access to their books and financial records."). Unless Defendants agree to provide XL with such full and complete access without objection, XL is entitled to an Order from the Court enforcing its right to same.

## III. The Upcoming Settlement Conference Should Have No Impact on the Motion Because XL is Legally and Contractually Entitled to the Collateral it Seeks from Defendants

The upcoming settlement conference should have no bearing on the outcome of the Motion because XL has established its legal and contractual entitlement to collateral from Defendants. Indeed, as set forth in this brief and its prior submissions, XL became legally entitled to collateral

TRIF & MODUGNO

The Honorable Brendan A. Hurson, U.S.M.J.
May 6, 2022
Page 4

from Defendants when it first became exposed to claims against the Bonds. Ultimately, the settlement conference should have no impact on XL's legal and contractual entitlement to this relief.

Respectfully submitted,

*/s/ Kevin S. Brotspies*

Kevin S. Brotspies

cc: Matthew S. Sturtz, Esq. (via Electronic Filing)
Thurman Zollicoffer, Esq. (via Electronic Filing)