UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| XL SPECIALTY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>BIGHORN CONSTRUCTION AND RECLAMATION, LLC, BRIDGELINK ENGINEERING, LLC, BRIDGELINK COMMODITIES, LLC,<br>BRIDGELINK INVESTMENTS, LLC, BRIDGELINK DEVELOPMENT, LLC, BRIDGELINK RENEWABLE ENERGY INVESTMENTS LLC, INTERMOUNTAIN ELECTRIC SERVICE, INC.,  BIGHORN INVESTMENTS AND PROPERTIES, LLC, COLE W. JOHNSON, CORD H. JOHNSON, CASSIE J. HAMILTON<br><br>Defendants. | Civil Action No.<br>1:21-cv-03068-GLR |

**DECLARATION OF BARRY HUBER OF XL SPECIALTY INSURANCE COMPANY
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

I, Barry Huber, declare as follows:

1. I am over the age of 18 and am competent to testify to the matters set forth herein. I have personal knowledge of the facts set forth herein.

2. I submit this declaration in support of Plaintiff, XL Specialty Insurance Company's ("XL"), motion for summary judgment against Defendants, Bighorn Construction and Reclamation LLC ("BCR"), Bridgelink Engineering, LLC, Bridgelink Commodities, LLC, Bridgelink Investments, LLC, Bridgelink Development, LLC, Bridgelink Renewable Energy Investments, LLC, Intermountain Electric Service, Inc., Bighorn Investments and Properties, LLC, Cole W. Johnson, Cord H. Johnson and Cassie J. Hamilton (collectively, "Indemnitors").

1

I. **The Indemnity Agreement**

    3.    On or about June 25, 2021, in consideration for and in order to induce XL, as surety, to issue bonds on behalf of BCR as principal, on June 25, 2021, Indemnitors executed a General Agreement of Indemnity in favor of XL, as indemnitee (the "Indemnity Agreement").

    4.    A true and accurate copy of the Indemnity Agreement is attached hereto as **Exhibit A**.

    5.    Pursuant to Paragraph 3 of the Indemnity Agreement, the Indemnitors agreed, jointly and severally, to:

> To exonerate, indemnify, hold harmless and keep indemnified [XL] from and against all demands, claims, losses, costs, liabilities, damages, and expenses including, without limitation, attorney's fees, expert's fees, interest, court costs, investigative expenses, document reproduction and storage charges (collectively the "Surety's Loss") which [XL] may sustain or incur by reason of the issuance of the Bonds or Indemnitors' failure to perform or comply with any of the provisions of this Agreement or [XL] attempting to obtain a release of or evidence of termination under such Bonds.

Ex. A at ¶ 3

    6.    In Paragraph 3 of the Indemnity Agreement, the Indemnitors further agreed, jointly and severally, that:

> An itemized, sworn statement by an employee of [XL] or any other evidence of [XL's] Loss shall be prima facie evidence of propriety, amount and existence of Indemnitors liability to [XL]. Indemnitors shall pay to [XL] interest, including pre and post judgment interest on all disbursements made by [XL] at the maximum rate permitted by law, calculated from the date of each such disbursement.

Id. at ¶ 3

    7.    Pursuant to Paragraph 5 of the Indemnity Agreement, the Indemnitors further agreed, jointly and severally, that:

> In order to exonerate and indemnify [XL], to place [XL] in immediately available funds, in a form and amount deemed acceptable in the [XL]'s sole discretion, when requested to do so in order to meet and satisfy any claim, reserve established by [XL], or demand made upon [XL] under the Bonds (whether or not such claims or demands are contested by Indemnitors before [XL] shall be required to make payment under the Bonds). Indemnitors acknowledge that failure of Indemnitors to deposit such funds with [XL] in accordance with this section in the amounts, in a form and at the time demanded by [XL] shall cause irreparable harm for which [XL] has no adequate remedy at law. Indemnitors agree that [XL] shall be entitled to injunctive relief for specific performance of Indemnitors' obligation to deposit funds in accordance with this section and expressly waives and relinquishes any claims or defenses to the contrary.

Id. at ¶ 5

8. Pursuant to Paragraph 8 of the Indemnity Agreement, the Indemnitors further agreed, jointly and severally, that:

> [XL] may, at any time and for any reason in its sole discretion, require the Indemnitors upon written notice to immediately procure the full release of the Bonds or deliver to [XL] collateral security in the form acceptable to [XL]. The collateral security will be in an amount equal to 100% of all undischarged liability under all Bonds, which liability shall be determined by [XL] as of the date of written notice.

Id. at ¶ 8.

9. Pursuant to Paragraph 8 of the Indemnity Agreement, the Indemnitors further agreed, jointly and severally, that:

> Indemnitors acknowledge that failure to deposit such funds with [XL] in accordance with this section shall cause irreparable harm for which [XL] has no adequate remedy at law. Indemnitors agree that [XL] shall be entitled to injunctive relief for specific performance of Indemnitors' obligation to deposit funds in accordance with this section and expressly waive and relinquish any claims or defenses to the contrary. Collateral security to be provided to [XL] shall be sent to XL Specialty Insurance Company, 505 Eagleview Blvd., Suite 100, PO Box 636, Exton, PA 19341-0636, Attn: Collateral Manager.

Id. at ¶ 8.

10. Pursuant to Paragraph 4 of the Indemnity Agreement, the Indemnitors further agreed, jointly and severally, that:

> if [XL] (i) receives any claim under any Bonds or (ii) establishes, in its sole discretion, any reserve, the Indemnitors will provide [XL] or its designees access to all records, including all financial records, of the Indemnitors for the purposes of examining and copying same.
>
> [Id. at ¶ 24, Ex. A at ¶ 4.]

## II. The Bonds

### a. The Depcom Project & Depcom Bonds

11. Depcom Power, Inc. ("Depcom") executed a contract ("Depcom Contract") to perform as general contractor on the project known as "MD70 Richfield Photovoltaic Power Plant" ("Depcom Project").

12. Subsequent to the execution of the Indemnity Agreement, BCR entered into a subcontract ("Depcom Subcontract") with Depcom to perform work on the Project.

13. On or about June 17, 2021, XL, as surety, issued a Subcontract Performance Bond ("Depcom Performance Bond") and Subcontract Payment Bond ("Depcom Payment Bond"), both bearing bond no. US00104943SU21A (collectively the "Depcom Bonds") on behalf of BCR, as principal, and in favor of Depcom, as obligee, in connection with the Depcom Project.

14. True and accurate copies of the Depcom Bonds are attached hereto as composite **Exhibit B**.

  b. **The Monmouth Project & Monmouth Bonds**

15. MYR Energy Services, Inc. ("MYR") executed a contract ("MYR Contract") to perform as general contractor on the project known as "Monmouth Solar Project" ("Monmouth Project").

16. On or about June 11, 2021, <u>MYR</u> entered into a subcontract ("Monmouth Subcontract") with BCR whereunder BCR agreed to perform work on the Monmouth Project.

17. On or about June 25, 2021, XL, as surety, issued a Subcontract Performance Bond ("Monmouth Performance Bond") and Subcontract Payment Bond ("Monmouth Payment Bond"), both bearing bond no. US00104945SU21A (collectively the "Monmouth Bonds") on behalf of BCR, as principal, and in favor of MYR, as obligee, in connection with the Monmouth Project.

18. True and accurate copies of the Monmouth Bonds are attached hereto as composite **Exhibit C**.

### III. <u>XL Begins to Receive Claims Against the Bonds</u>

19. By letter dated October 6, 2021, Depcom issued notice to XL claiming that BCR removed its personnel and began to demobilize its equipment from the Depcom Project.

20. Depcom also notified XL that it was aware of at least nine (9) sub-subcontractors and vendors that are owed balances from BCR that were past due.

21. According to the schedule of unpaid sub-subcontractors and vendors provided by Depcom, it then appeared that BCR owed its subcontractors and vendors more than $1,230,000.

22. By letter dated October 21, 2021, Depcom issued a termination notice to BCR terminating the Depcom Subcontract ("BCR Termination").

23. By letter dated November 5, 2021, counsel for Richfield Farms LLC ("Richfield") asserted a claim against the Depcom Payment Bond for labor and/or materials allegedly supplied

to the Depcom Project, in the amount of $300,258.49, inclusive of finance charges ("Richfield Claim").

24. A true and accurate copy of the Richfield Claim Letter is attached hereto as **Exhibit D**.

25. By letter dated November 12, 2021, counsel for United Rentals ("United Rentals") asserted a claim against the Depcom Payment Bond for labor and/or materials allegedly supplied to the Depcom Project, in the amount of $265,336.50 ("United Rentals Depcom Claim").

26. A true and accurate copy of the United Rentals Depcom Claim is attached hereto as **Exhibit E**.

27. By letter dated November 30, 2021, MYR issued a Notice of Default of the MYR Subcontract to BCR, copying XL ("MYR Default").

28. Within the MYR Default, MYR demanded that certain defects be cured within seven (7) days and, if said defects remained uncured, MYR reserved its right to terminate the Monmouth Subcontract and make a claim against the Monmouth Performance Bond.

**IV.   XL Demands Collateral from Indemnitors**

29. After receiving notice of the BCR Termination and Richfield Claim, by letter dated November 11, 2021, XL requested, consistent with the express terms of the Indemnity Agreement, that the Indemnitors deposit collateral security with XL in the amount of $2,000,000.

30. A true and accurate copy of XL's November 11, 2021 letter to the Indemnitors is attached hereto as **Exhibit F**.

31. Despite XL's November 11, 2021, demand letter, the Indemnitors failed to, among other things, deposit collateral with XL, in material breach of the Indemnitors' joint and several obligations made under the Indemnity Agreement.

32. XL, in its November 11, 2021 letter, also demanded that the Indemnitors provide XL with unrestricted access to the Indemnitors' financial statements, books, records, and accounts.

33. By letter dated November 17, 2021, XL sent another letter to the Indemnitors wherein XL: (i) advised Indemnitors that Richfield supplied documents in support of its claim and "it appears that Richfield supplied materials to the Project and the amounts claimed are due and owing except for finance charges; and (ii) reiterated its demand that Indemnitors deposit collateral security.

34. A true and accurate copy of XL's November 17, 2021 letter to the Indemnitors is attached hereto as **Exhibit G**.

35. Between November 17, 2021, and the Thanksgiving holiday, XL attempted to resolve the matter with the Indemnitors without Court intervention, however, Indemnitors refused to provide XL adequate assurances and/or access to their books and records as required under the Indemnity Agreement.

V.  **XL Commences this Lawsuit and Receives Additional Claims Against the Bonds**

36. On December 1, 2021, XL filed this lawsuit against Indemnitors via Verified Complaint and, at the same time it filed this action, XL filed an emergent motion for restraints ("Emergent Motion") seeking specific performance of its right to demand collateral security from Indemnitors in the amount of $2,000,000.

37. After XL filed its Verified Complaint and Emergent Motion, XL received additional claims against the Depcom Bonds and Monmouth Bonds (collectively, "Bonds").

      **a. XL Receives Claims Against the Depcom Bonds During the Pendency of this Lawsuit**

38. In or around December 2021, Bennett Brewer & Associates LLC ("Bennett Brewer") asserted a claim in the amount of $134,100 against the Depcom Payment Bond for labor and/or materials allegedly supplied to the Depcom Project ("Bennett Brewer Claim").

39. On December 7, 2021, Ferguson Waterworks ("Ferguson") filed a claim in the amount of $147,764.83 against the Depcom Payment Bond for labor and/or materials allegedly supplied to the Depcom Project ("Ferguson Claim").

40. A true and accurate copy of the Ferguson Claim is attached hereto as **Exhibit H**.

41. On January 3, 2022, Willard Agri-Service filed a claim in the amount of $15,971.97 against the Depcom Payment Bond for labor and/or materials allegedly supplied to the Depcom Project ("Willard Claim").

42. A true and accurate copy of the Willard Claim is attached hereto as **Exhibit I**.

43. On January 4, 2022, William Hunter Wessels/Mac Farms, Inc. ("Mac Farms") filed a claim in the amount of $88,200 against the Depcom Payment Bond for labor and/or materials allegedly supplied to the Depcom Project ("Mac Farms Claim").

44. A true and accurate copy of the Mac Farms Claim is attached hereto as **Exhibit J**.

45. By letter dated April 1, 2022, counsel for Dozr, Ltd. ("Dozr") asserted a claim in the amount of $222,475.20 against the Depcom Payment Bond for labor and/or materials allegedly supplied to the Depcom Project ("Dozr Claim").

46. A true and accurate copy of the Dozr Claim is attached hereto as **Exhibit K**.

**b. XL Receives Claims Against the Monmouth Bonds During the Pendency of the Lawsuit**

47. By letter dated December 8, 2021, MYR issued a Notice of Termination to BCR, copying XL ("MYR Termination").

48. On December 8, 2021, XL received notice that White Cap L.P. ("White Cap") had filed a Certificate of Lien ("White Cap Lien") in the amount of $11,145.19 against the Monmouth Project ("White Cap Lien Notice").

49. A true and accurate copy of the White Cap Lien Notice is attached hereto as **Exhibit L**.

50. On December 13, 2021, MYR wrote to BCR, copying XL, demanding that it discharge a lien that was filed by BCR vendor, Milton Rents, in the amount of $47,427.93 ("Milton Rents Lien Demand").

51. A true and accurate copy of the Milton Rents Lien Demand is attached hereto as **Exhibit M**.

52. On December 15, MYR filed a claim in the amount of $150,000 or more against the Monmouth Performance Bond ("MYR Claim").

53. A true and accurate copy of the MYR Claim is attached hereto as **Exhibit N**.

54. Upon receiving the MYR Claim, XL had communications with MYR during which time MYR indicated that its claim would likely increase because it did not know how much it would cost to complete BCR's scope of work on the Monmouth Project with a completion contractor.

55. On December 16, 2021, United Rentals filed a claim in the amount of $64,947.86 against the Monmouth Payment Bond for labor and/or materials allegedly supplied to the Monmouth Project ("United Rentals Monmouth Claim").

56. A true and accurate copy of the United Rentals Monmouth Claim is attached hereto as **Exhibit O**.

### VI. XL Resolves Certain Claims Against the Bonds

57. After filing the Emergent Motion, counsel for XL and Indemnitors jointly agreed to stay the Court's decision on the Emergent Motion for one (1) month in hopes that the parties could resolve the claims that had already been made, and were continuing to be made, against the Bonds.

58. During the one (1) month stay period, XL and Indemnitors had conversations with counsel for Depcom, during which time Depcom indicated that it intentionally withheld payment from BCR for certain invoices after disputes arose over BCR's performance of work on the Depcom Project.

59. The parties agreed that, to the extent any claims against the Depcom Payment Bond arose from invoices that Depcom intentionally withheld payment from BCR, Depcom would release the withheld funds applicable to such claims and BCR would agree to count such payment against amounts BCR alleged it was owed from Depcom ("Joint Check Agreement").

60. In or around December 2021, after conducting a good faith investigation, XL resolved the Bennett Brewer Claim pursuant to the Joint Check Agreement whereby Depcom agreed to issue payment directly to Bennett Brewer in the amount of $134,100.

61. On or about December 23, 2021, after conducting a good faith investigation, XL resolved the Richfield Claim pursuant to the Joint Check Agreement whereby Depcom issued payment directly to Richfield in the amount of $284,294, and BCR agreed to pay the balance of $16,234.49.

62. On or about January 21, 2022, after conducting a good faith investigation, XL resolved the United Rentals Depcom Claim pursuant to the Joint Check Agreement whereby Depcom issued payment directly to United Rentals in the amount of $148,707, and XL paid the balance of $116,929.50.

63. On or about February 23, 2022, after conducting a good faith investigation, XL resolved the Ferguson Claim pursuant to the Joint Check Agreement whereby Depcom issued payment directly to Ferguson in the amount of $2,314, and XL paid the balance of $145,450.83.

64. On or about June 28, 2022, after conducting a good faith investigation, XL resolved the Dozr Claim pursuant to the Joint Check Agreement whereby Depcom issued payment directly to Dozr in the amount of $154,520, and XL paid the balance of $67,955.20.

65. On or about July 7, 2022, after conducting a good faith investigation, XL resolved the Mac Farms Claim by issuing payment to Mac Farms in the amount of $88,200.

66. To date, XL has incurred losses under the Depcom Payment Bond in the amount of $418,535.53, along with additional costs and expenses, including attorneys' fees, to resolve all of the referenced claims against the Bonds in the amount of $44,769.20.

67. Attached as **Exhibit P** is an itemized statement of XL's losses, costs and expenses to date.

68. Indemnitors have failed and refused to indemnify and reimburse XL for its losses, costs and expenses, including attorneys' fees, incurred as a result of its having issued the Bonds on behalf of BCR and as a result of XL being forced to pursue its right under the Indemnity Agreement.

**VII.   XL Remains Exposed to Claims Against the Bonds**

69.   By letter dated June 23, 2022, XL was copied on a letter from counsel for Depcom, wherein Depcom's counsel demanded payment from BCR in the amount of $1,545,743.15 and, if BCR did not pay as demanded, Decom indicated that it would seek recourse against the Depcom Performance Bond ("Depcom Demand").

70.   A true and accurate copy of the Depcom Letter is attached hereto as **Exhibit Q**.

71.   Immediately after receiving the Depcom Notice, by email dated June 27, 2022, XL, through counsel, demanded that Indemnitors deposit collateral with XL in the amount of $1,545,743.15 by close of business on July 6, 2022 ("Depcom Collateral Demand").

72.   A true and accurate copy of the Depcom Collateral Demand is attached hereto as **Exhibit R**.

73.   On June 29, 2022, MYR informed XL that the lump sum amount of the MYR Claim had been determined, and that it was seeking a total amount of $266,073.12 against the Monmouth Performance Bond, which amounts consist of: (i) $207,500 to pay the completion contractor to complete BCR's scope of work on the Monmouth Project; (ii) payment by MYR to Milton Rents in the amount of $47,427.93 to satisfy the lien that Milton Rents filed against the Monmouth Project; and (iii) payment by MYR to BCR vendor, White Cap, in the amount of $11,145.19 to satisfy the lien that White Cap filed against the Monmouth Project.

74.   By email dated July 1, 2022, Indemnitors, through counsel, offered to provide XL a second lien position on certain equipment allegedly valued at $2 million and with equity totaling $725,000.

75.   XL did not accept the Indemnitors' offer because a second lien position is not acceptable collateral.

76. XL continues to face exposure to liability under the Bonds in an amount not less than $1,892,736.10, as a result of the unresolved: (i) Willard Claim ($15,971.97); (ii) Depcom Demand ($1,545,743.15); (iii) MYR Claim ($266,073.12); and (iv) United Rentals Monmouth Claim ($64,947.86).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  July 25, 2022

_____
Barry Huber
Global Practice Leader
XL Specialty Insurance Company