## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| XL SPECIALTY INSURANCE CO., | | |
| | * | |
| Plaintiff, | | |
| | * | |
| v. | | |
| | * | Civil No. 21-3068-BAH |
| BIGHORN CONSTRUCTION & | | |
| RECLAMATION, LLC, et al., | * | |
| | | |
| Defendants. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### <u>MEMORANDUM OPINION</u>

Before the Court is Plaintiff XL Specialty Insurance Company's ("XL's" or "Surety's" or "Indemnitee's" or "Plaintiff's") pending motion for summary judgment.  ECF 40 (hereinafter the "Motion").   The Motion included numerous exhibits.[1]  Defendants, including (1) Bighorn Construction and Reclamation, LLC ("BCR"), (2) Bighorn Investments and Properties, LLC ("Bighorn Investments and Properties"), (3) Bridgelink Engineering, LLC ("Bridgelink Engineering"), (4) Bridgelink Commodities, LLC ("Bridgelink Commodities"), (5) Bridgelink Investments, LLC ("Bridgelink Investments"), (6) Bridgelink Development, LLC ("Bridgelink Development"), (7) Bridgelink Renewable Energy Investments, LLC ("Bridgelink Renewable"), (8) Intermountain Electric Service, Inc. ("Intermountain Electric"), (9) Cole W. Johnson, (10) Cord H. Johnson, and (11) Cassie J. Hamilton (collectively "Indemnitors" or "Defendants"), did not file any oppositions.   The Court has addressed this dispute previously in a Memorandum Opinion issued June 10, 2022 addressing Plaintiff's request for a preliminary injunction.  ECF 35.  The

---

[1] The Court references all filings by their respective ECF numbers and the page numbers by the ECF page numbers on the top of the page.

Court has reviewed all relevant filings, including the Motion (ECF 40) as well as Plaintiff's letter modifying its requested judgment (ECF 41), and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). Accordingly, for the reasons stated below, Plaintiff's Motion is **GRANTED IN PART** and **DENIED IN PART**.

I. <u>**BACKGROUND**</u>

Plaintiff is an insurance company that is incorporated under Delaware state law and maintains its principal place of business in the state of Connecticut. ECF 1 ¶ 3; ECF 15 ¶ 3. Plaintiff's business consists of issuing performance and payment bonds on behalf of construction contractors. ECF 1 ¶¶ 15-16; ECF 15 ¶¶ 15-16. The defendants are eight corporations allegedly[2] incorporated under Texas state law, all of which maintain principal places of business in Texas, and three individuals residing in Texas. ECF 1 ¶¶ 4-14. Plaintiff alleges that "BCR, at all relevant times, was engaged in the construction contracting business." ECF 1 ¶ 15; ECF 15 ¶ 15.

This case centers on two construction projects involving BCR, the technical details of which are not relevant to the matter before the Court. On June 11, 2021, BCR entered into a subcontract with MYR Energy Services, Inc. ("MYR") relating to BCR's agreement to perform work on the Monmouth Solar Project ("Monmouth Project"). ECF 40-1 ¶¶ 15–18. BCR later entered into a subcontract" with Depcom Power, Inc. ("Depcom") relating to work BCR agreed to perform on the MD70 "Richfield" project ("Depcom Project"). ECF 40-1 ¶¶ 11–14. As part of its involvement with these projects, BCR was required to provide Depcom and MYR payment and

---

[2] Plaintiff alleges that each of the corporate Defendants are "organized and existing under the law of Fort Worth, Texas[.]" ECF 1 ¶¶ 4–11. Defendants deny Plaintiff's allegations regarding the place of incorporation as to certain corporate Defendants. *See* ECF 15 ¶¶ 4–5, 7, 9–11 (denying the allegation); ¶¶ 6, 8 (admitting the allegation). Regardless, Defendants raise no challenge related to jurisdiction or venue.

performance bonds, which BCR secured through an agreement with Plaintiff.  ECF 40-1 ¶ 13; ECF

1 ¶ 16.

### A.    Indemnity Agreement

On June 25, 2021, Plaintiff and Defendants executed a General Agreement of Indemnity

("Indemnity Agreement")[3] "[i]n consideration for and in order to induce XL, as surety, to issue

bonds on behalf of BCR as principal . . . ."  ECF 40-1 ¶ 3.  Stated differently, the parties entered

into the Indemnity Agreement "for the purpose of indemnifying the Surety in connection with any

Bonds[4] . . . previously or hereafter executed or procured for, on or on behalf of, or at the request

of any Indemnitors."  ECF 40-2, at 1.  Relevant portions of the Indemnity Agreement state that

Defendants, "jointly and severally, agree with Surety as follows":

> **3. <u>INDEMNITY TO SURETY</u>** - To exonerate, indemnify, hold harmless and keep
> indemnified the Surety from and against all demands, claims, losses, costs,
> liabilities, damages, and expenses including, without limitation, attorney's fees,
> expert's fees, interest, court costs, investigative expenses, document reproduction
> and storage charges (collectively the "Surety's Loss") which the Surety may sustain
> or incur by reason of the issuance of the Bonds or Indemnitors' failure to perform
> or comply with any of the provisions of this Agreement or Surety attempting to
> obtain a release of or evidence of termination under such Bonds.  An itemized,
> sworn statement by an employee of Surety or any other evidence of Surety's Loss
> shall be prima facie evidence of propriety, amount and existence of Indemnitors
> liability to Surety.  Indemnitors shall pay to Surety interest, including pre and post
> judgment interest on all disbursements made by Surety at a maximum rate
> permitted by law, calculated from the date of each such disbursement.
>
> **4. <u>BOOKS AND RECORDS</u>** - That if the Surety (i) receives any claim under any
> Bonds or (ii) establishes, in its sole discretion, any reserve, the Indemnitors will
> provide the Surety or its designees access to all records, including all financial
> records, of the Indemnitors for the purposes of examining and copying same.

---

[3] The Indemnity Agreement is attached to the Motion as Exhibit A.  ECF 40-2.

[4] The parties agree that the term "Bonds" "shall include any and all bonds, undertakings, contracts
of suretyship, reimbursement agreements, guaranty or indemnity, or other writings obligatory in
nature, and any renewals or extensions thereof executed by Surety or at the request of Indemnitors
. . ."  ECF 40-2, at 1.

**5. <u>PLACE IN FUNDS</u>** -  In order to exonerate and indemnify the Surety, to place the Surety in immediately available funds, in a form and amount deemed acceptable in the Surety's sole discretion, when requested to do so in order to meet and satisfy any claim, reserve established by Surety, or demand made upon the Surety under the Bonds (whether or not such claims or demands are contested by Indemnitors before the Surety shall be required to make payment under the Bonds). Indemnitors acknowledge that failure of Indemnitors to deposit such funds with Surety in accordance with this section in the amounts, in a form and at the time demanded by Surety shall cause irreparable harm for which Surety has no adequate remedy at law. Indemnitors agree that Surety shall be entitled to injunctive relief for specific performance of Indemnitors' obligation to deposit funds in accordance with this section and expressly waives and relinquishes any claims or defenses to the contrary.

. . .

**8. <u>PLACE IN COLLATERAL</u>** - The Surety may, at any time and for any reason in its sole discretion, require the Indemnitors upon written notice to immediately procure the full release of the Bonds or deliver to the Surety collateral security in the form acceptable to the Surety. The collateral security will be in an amount equal to 100% of all undischarged liability under all Bonds, which liability shall be determined by Surety as of the date of written notice. Indemnitors acknowledge that failure to deposit such funds with Surety in accordance with this section shall cause irreparable harm for which Surety has no adequate remedy at law. Indemnitors agree that Surety shall be entitled to injunctive relief for specific performance of Indemnitors' obligation to deposit funds in accordance with this section and expressly waive and relinquish any claims or defenses to the contrary. Collateral security to be provided to the Surety shall be sent to XL Specialty Insurance Company, 505 Eagleview Blvd., Suite 100, PO Box 636, Exton, PA 19341-0636, Attn: Collateral Manager.

ECF 40-2 ¶¶ 3–5, 8.

On the same day the parties executed the Indemnity Agreement, BCR, as principal, and XL, as surety, executed payment and performance bond subcontracts with Depcom ("Depcom

Bond")[5] and MYR ("Monmouth Bond")[6] as obligees, respectively.  ECF 40-3, at 1-3; ECF 40-4, at 4.

### B.      Pre-Lawsuit Claims Against the Bonds

On October 6, 2021, Depcom sent Plaintiff a letter, informing them that BCR had removed its personnel from the Depcom Project site and began to demobilize its equipment from the Depcom Project.  ECF 40-1 ¶ 19.  Depcom notified Plaintiff that Depcom was aware of at least nine sub-subcontractors and vendors that were owed past-due balances from BCR.  ECF 40-1 ¶ 20.  Depcom subsequently issued a termination notice to BCR, thereby terminating the Depcom Bond subcontract.  ECF 40-1 ¶ 22.  On November 5, 2021, a sub-subcontractor to the Depcom Project, Richfield Farms LLC, sent Plaintiff a letter, providing notice of a claim for $300,258.49 against the Depcom Bond for amounts owed to Richfield for material provided to the Depcom Project ("Richfield Claim").  ECF 40-1 ¶ 23; ECF 40-5.

On November 11, 2021, Plaintiff sent Defendants a letter notifying them of Richfield's claim, and also announcing Plaintiff's pending request that Defendants deposit collateral with Plaintiff and allow Plaintiff to inspect Defendants' books.  ECF 40-1 ¶¶ 29, 32; ECF 40-7.  On November 12, United Rentals filed a claim against the Depcom Bond in the amount of $265,336.50 ("United Rentals Depcom Claim").  ECF 40-1 ¶¶ 25–26; ECF 40-6.  Soon thereafter, Plaintiff sent a second letter to Defendants noting additional claims after Defendants failed to comply with the requests in the November 11, 2021 letter.  ECF 40-1 ¶¶ 31, 33; ECF 40-8.  On November 30, 2021,

---

[5] The subcontract related to the Depcom Project payment bond in the amount of $5,551,473.00 and performance bond for the same amount are attached to the Motion as Exhibit B.  ECF 40-3.

[6] The subcontract related to the Monmouth Project performance bond of $853,469.22 and payment bond for the same amount is attached to the Motion as Exhibit C.  ECF 40-4.

MYR sent a "Notice of Default" of the BCR subcontract to BCR, copying XL.  ECF 40-1 ¶¶ 27–28.

### C.    This Litigation

On December 1, 2021, XL filed the Verified Complaint alleging that Defendants materially breached "the Indemnitors' joint and several obligations under the Indemnity Agreement" by failing to deposit collateral with Plaintiff and/or provide Plaintiff access to Defendants' "financial statements, books, records, and accounts[.]"  ECF 1 ¶ 49.

The Verified Complaint asserts a total of seven claims, four of which are alleged against all Indemnitors—specific performance to enforce XL's demand for collateral security (Count I), specific performance to inspect Defendants' books and records (Count II), contractual indemnification (Count III), and *quia timet* relief (Count V)—and three claims solely against BCR—exoneration (Count IV[7]), common law indemnification (Count VI), and subrogation (Count VII).  ECF 1 ¶¶ 50–81.  Defendants filed an answer on February 3, 2022.  ECF 15.

Also on December 1, 2021, Plaintiff filed an Emergent Motion for Temporary and Preliminary Injunctive Relief ("Emergent Motion").  ECF 2.  After the parties jointly requested a suspension of deadlines regarding the Emergent Motion and the parties supplied supplemental briefing on the issues, the Court granted the Emergent Motion in part on June 10, 2022, and ordered Defendants to deposit collateral with Plaintiff in the amount of $500,647.95.  ECF 36.

### D.    Additional Claims Against the Bonds Asserted After Litigation Began

Around the time the lawsuit commenced, XL began receiving additional claims against the Depcom Bonds.  ECF 40-1 ¶¶ 38–73.  Around December 2021, Bennett Brewer & Associates LLC

---

[7] The Verified Complaint includes two counts titled "Fifth Count," the first for exoneration and the second for *quia timet* relief, but there is no "Fourth Count."  As such, the Court will adopt the exoneration claim as Count IV.

filed a claim for $134,100 ("Bennett Brewer Claim").  ECF 40-1 ¶ 38.  On December 7, Ferguson Waterworks filed a claim for $147,764.83 ("Ferguson Claim").  ECF 40-1 ¶¶ 39–40; ECF 40-9. On January 3, 2022, Willard Agri-Service filed a claim for $15,971.97 ("Willard Claim").  ECF 40-1 ¶¶ 41–42; ECF 40-10.  On January 4, William Hunter Wessels/Mac Farms, Inc. filed a claim for $88,200 ("Mac Farms Claim").  ECF 40-1 ¶¶ 43–44; ECF 40-11.  On April 1, Dozr, Ltd. filed a claim for $222,475.20 ("Dozr Claim").  ECF 40-1 ¶¶ 45–46; ECF 40-12.  On June 23, 2022, Depcom wrote a letter to BCR, copying XL, and demanding payment of $1,545,743.15, and noting that it intended to file a claim against the Depcom Bond ("Depcom Demand").  ECF 40-1 ¶¶ 69–70.

Several of these claims were ultimately resolved.  The Richfield and Bennett Brewer Claims were resolved in December 2021.  ECF 40-1 ¶¶ 60–61.  The United Rentals Depcom Claim was resolved on January 21, 2022, with XL paying $116,929.50.  ECF 40-1 ¶ 62.  The Ferguson Claim was resolved on February 23, 2022, with XL paying $145,450.83.  ECF 40-1 ¶ 63.  The Dozr Claim was resolved on June 28, with XL paying $67,955.20.  ECF 40-1 ¶ 64.  The Mac Farms Claim was resolved on July 7, with XL paying the full $88,200.  ECF 40-1 ¶ 65.

XL also received numerous claims against the Monmouth Bond.  On December 8, 2021, White Cap L.P. informed XL that it had filed a lien against the Monmouth Bond in the amount of $11,145.19 ("White Cap Lien").  ECF 40-1 ¶¶ 48–49; ECF 40-13.  On December 13, MYR demanded from BCR, copying XL, payment of $47,427.93 to discharge a lien in that amount filed by Milton Rents ("Milton Rents Lien Demand").  ECF 40-1 ¶¶ 50–51.  On December 15, MYR filed a $150,000 claim and indicated that the amount would likely increase ("MYR Claim").  ECF 40-1 ¶¶ 52–54; ECF 40-15.  On June 29, 2022, MYR amended its claim amount to $266,073.12, which included $207,500 to complete work on the Monmouth Project, $47,427.93 to satisfy the

Milton Rents Lien Demand, and $11,145.19 to satisfy the White Cap Lien. ECF 40-1 ¶ 73. On December 16, 2021, United Rentals filed a claim for $64,947.86 ("United Rentals Monmouth Claim"). ECF 40-1 ¶¶ 55–56; ECF 40-16. In late September 2022, MYR and XL resolved the MYR Claim, with XL paying the full $266,073.12. ECF 41, at 1; ECF 41-1.

### E.     Status of the Claims and XL's Losses, Costs, and Expenses

As noted above, some of the claims against the Depcom and Monmouth Bonds have been resolved. ECF 40-1 ¶¶ 60–65, 73. However, the Willard Claim and Depcom Demand against the Depcom Bond remain unresolved, as does the United Rentals Monmouth Claim against the Monmouth Bond. ECF 40-1 ¶ 76; ECF 41, at 1. These claims total $1,626,662.98. ECF 40-1 ¶ 76; ECF 41, at 1. To date, XL has incurred $648,608.65 in losses under the Depcom and Monmouth Bonds, plus an additional $44,769.20 in costs and expenses, including attorney's fees, related to resolving the claims. ECF 40-1 ¶¶ 66–67; ECF 40-17.

### F.     The Motion for Summary Judgment

Plaintiff filed the Motion on July 26, 2022, seeking summary judgment on the first six counts of the Verified Complaint, a judgment in the amount of $463,304.73 for losses, costs, and expenses plus interest, and an order requiring Defendants, jointly and severally, to deposit $1,892,736.10[8] in collateral with XL and requiring Defendants to provide XL access to their financial records and books. ECF 40, at 1–2.

---

[8] The Court notes that there appear to be several instances of the same typographical error in the amount Plaintiff has requested be deposited as collateral for unresolved claims. *Compare* ECF 40, at 18, 26, 27 (listing "$1,892,736.10"), *with* ECF 40, at 1, 8, 9, 30, 31 (listing "$1,893,736.10"). At the time the Motion was filed, the unresolved claims totaled $1,892,736.10 ($15,971.97 (Willard Claim) + $64,947.86 (United Rentals Monmouth Claim) + $1,545,743.15 (Depcom Demand) + $266,073.12 (MYR Claim)). After settling the MYR Claim, this amount is amended to $1,626,662.98. *See* ECF 41.

To its Motion, Plaintiffs attached numerous exhibits, including a declaration from Barry Huber, XL's Global Practice Leader (ECF 40-1), the Indemnity Agreement (ECF 40-2), the Depcom and Monmouth Bonds (ECFs 40-3, 40-4), evidence of the various claims (ECFs 40-5, 40-6, 40-9, 40-10, 40-11, 40-12, 40-13, 40-14, 40-15, 40-16, 40-18), communications sent to Defendants from XL (ECFs 40-7, 40-8, 40-19), and a sworn itemized list of XL's expenses, costs, and losses (ECF 40-17).   Defendants have not opposed the Motion or filed anything in response. On October 5, Plaintiff submitted a letter informing the Court about the resolution of the MYR Claim and requesting that the relief sought in the Motion be modified to reflect the settlement of the MYR Claim, amending the amount to be deposited as collateral to $1,626,662.98[9] and the amount in damages for losses, expenses, and costs to $729,377.85.   ECF 41.   Again, Defendants did not respond.   The Motion is now ripe for review, and, for the reasons stated below, the Court will GRANT the Motion in part.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure ("FRCP") 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any *material* fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a) (emphasis added).   "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)).   "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).   Accordingly, "the mere existence of *some* alleged factual dispute between the parties

_____

[9] Plaintiff's request for "$1,627,662.98" as collateral reflects the calculation with the typographical error noted above.   *See* ECF 41.   When the MYR Claim ($266,073.12) is subtracted from $1,892,736.10, the correct amount is $1,626,662.98.

will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson*, 477 U.S. at 247–48 (emphasis in original).  The Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.  *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam); *Scott v. Harris*, 550 U.S. 372, 378 (2007).

When a motion for summary judgment is unopposed, "the failure of a party to respond . . . may leave uncontroverted those facts established by the motion . . . ."  *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993).  But the Court must still thoroughly analyze the motion and determine whether the moving party is entitled to judgment as a matter of law based on those uncontroverted facts.  *See id.*

## III.   ANALYSIS

Plaintiff moves for summary judgment on six of the seven counts in the Verified Complaint, including the contractual indemnification claim (Count III), the claims for specific performance of the Indemnity Agreement both to enforce XL's demand for collateral security against Defendants (Count I) and to inspect Defendants' books and financial records (Count II), and the claims that XL is entitled to common-law indemnification from BCR (Count VI), *quia timet* relief against all Defendants (Count V), and exoneration against BCR (Count IV).[10]  ECF 40, at 14–24.  As a preliminary matter, this Court has already determined that New York law applies, as that is the jurisdiction identified in the Indemnity Agreement's choice-of-law provision.  *XL Specialty Ins. Co. v. Bighorn Constr. & Reclamation, LLC*, No. 21-3068-BAH, 2022 WL 2105925, at *6 (June 10, 2022), ECF 35.  For the reasons outlined below, XL is entitled to judgment as a matter of New York law on five of the six claims for which it moved for summary judgment.

---

[10] Plaintiff did not move for summary judgment on the subrogation claim against BCR (Count VII).

A.      **Contractual Indemnification Under the Indemnity Agreement**

XL is entitled to summary judgment on the contractual indemnification claim.
"Indemnification agreements are valid and enforceable under New York law." *Star Ins. Co. v.
Champion Constr. Servs. Corp.*, No. 13 CV 3635(ARR)(RML), 2014 WL 4065093, at *3
(E.D.N.Y. July 30, 2014) (citing *Am. Home Assurance Co. v. Gemma Constr. Co.*, 713 N.Y.S.2d
48, 52–53 (N.Y. App. Div. 2000)); *see also DiPizio Constr. Co., Inc. v. Erie Canal Harbor Dev.
Corp.*, No. 2013–602666, 2015 WL 13284897, at *3 (N.Y. Sup. Ct. Apr. 24, 2015) ("[I]t is well
settled that indemnity agreements . . . are enforceable in New York, and govern the relationship
between the parties thereto[.]").  "Where the terms of the indemnity agreement are unambiguous,
the Court must give effect to the express rights and obligations of the parties contained therein
. . . ." *DiPizio Constr. Co.*, 2015 WL 13284897, at *3.

Here, the Indemnity Agreement states as follows:

> To exonerate, indemnify, hold harmless and keep indemnified [XL] from
> and against all demands, claims, losses, costs, liabilities, damages, and
> expenses including, without limitation, attorney's fees, expert's fees,
> interest, court costs, investigative expenses, document reproduction and
> storage charges (collectively the "Surety's Loss") which [XL] may sustain
> or incur by reason of the issuance of the Bonds or Indemnitors' failure to
> perform or comply with any of the provisions of this Agreement or [XL]
> attempting to obtain a release of or evidence of termination under such
> Bonds.

ECF 40-2 ¶ 3.  Thus, the plain language of the Indemnity Agreement clearly states that Defendants
are contractually obligated to indemnify XL.

As XL argues, under New York law a surety can establish a prima facie case of contractual
indemnity regardless of actual liability "upon the submission . . . of a sworn itemized statement of
its losses, costs and expenses."  ECF 40 at 16; *see Am. Home Assurance Co.*, 713 N.Y.S.2d at 52
("By submitting the indemnity agreements, along with a sworn itemized statement of loss and
expense . . . further supported by copies of payment drafts in that same amount, plaintiff

demonstrated *prima facie* entitlement to recovery thereupon.”); *Int'l Fid. Ins. Co. v. Spadafina*, 596 N.Y.S.2d 453, 454–55 (N.Y. App. Div. 1993) (“[Plaintiff] has stated a prima facie case under the contract by submitting proper documentation of payment of the settlement to [the subcontractor] as well as the fees and costs incurred in making a settlement . . . .”). The amounts paid by a surety under such indemnity agreements “are scrutinized only for good faith and reasonableness as to the amount paid.” *Spadafina*, 596 N.Y.S.2d at 454.

XL attached to its Motion the sworn declaration of Barry Huber, Global Practice Leader, attesting to XL's itemized losses, costs, and expenses (ECF 40-1) and a sworn itemized list of the same (ECF 40-17). XL's losses amount to $684,608.65, which includes $116,929.50 to resolve the United Rentals Depcom Claim, $145,450.83 to resolve the Ferguson Claim, $88,200 to resolve the Mac Farms Claim, $67,955.20 to resolve the Dozr Claim, and $266,073.12 to resolve the MYR Claim.[11] ECF 40-1 ¶¶ 25–26, 39–40, 43–44, 45–46, 52–53, 62–64, 73; ECF 41. XL's expenses through July 26, 2022, amount to $44,769.20. ECF 40-1 ¶¶ 66–67; ECF 40-17, at 2. This totals $729,377.85. There is no indication here that these payments are unreasonable or made in bad faith, and Defendants have not suggested otherwise. *See Berkley Reg'l Ins. Co. v. Murray*, No. CV DKC 15-0563, 2016 WL 235191, at *4 (D. Md. Jan. 20, 2016) (granting summary judgment on a claim for indemnity after noting that “Defendants have not responded to the pending motion, have not alleged bad faith or fraud, and do not dispute any material facts surrounding Plaintiff's

---

[11] Unlike the prevailing party in *American Home Assurance Company*, Plaintiff did not attach “copies of payment drafts” to its Motion. 713 N.Y.S. 2d. at 52. However, the Indemnity Agreement did not require Plaintiff to do so as it explicitly provides that “[a]n itemized, sworn statement by an employee of [XL] or any other evidence of [XL's] Loss shall be prima facie evidence of propriety, amount and existence of Indemnitors[*] liability to Surety.” ECF 40-2, at 2. As noted, Plaintiff attached to its Motion an itemized, sworn declaration by Plaintiff's employee detailing Plaintiff's loss. ECF 40-1. At minimum, the sworn statement represents sufficient “other evidence” to establish loss under the Indemnity Agreement. *See Reid v. Telentos Constr. Corp.*, No. 15-CV-2358-SJB, 2020 WL 6152494, at *7 (E.D.N.Y. Oct. 20, 2020).

payment of the claims."). Plus, Plaintiff has already resolved a number of pending claims, *see* ECF 41, at *1, providing further evidence that the claim is made in good faith. As such, the Court will award damages to XL in the amount of $729,377.85 for contractual indemnity.

      **B.**     **Specific Performance**

         **1.**    <u>To Enforce XL's Demand for Collateral Security</u>

     New York law holds that "[t]he obligation to make the deposit [of collateral security] is subject to enforcement by specific performance: 'The damage resulting from the failure to give security is not ascertainable, and the legal remedy is therefore inadequate[.]'" *BIB Constr. Co., Inc. v. Fireman's Ins. Co. of Newark*, 625 N.Y.S.2d 550, 552 (N.Y. App. Div. 1995) (quoting *Nat'l Sur. Corp. v. Titan Constr. Corp.*, 26 N.Y.S.2d 227, 230 (N.Y. Sup. Ct. 1940), *aff'd*, 24 N.Y.S.2d 141 (N.Y. App. Div. 1940)).

     Similar to *BIB Construction Co., Inc.*, the collateral security provision of the Indemnity Agreement specifically states that the amount of such requested security "will be in an amount equal to 100% of all undischarged liability under all Bonds, which liability shall be determined by Surety as of the date of written notice." ECF 40-2 ¶ 8. "So long as the sum demanded is reasonable, [the party] 'dealing at arm's length with relative equality of bargaining power' must abide by this term of the contract[.]" *BIB Constr. Co., Inc.*, 625 N.Y.S.2d at 552. "Courts applying New York law have stated that as a general matter, '[a] demand for collateral is reasonable if the sum demanded is commensurate with the claims made against the surety or the amount sought by a third party in litigation.'" *RLI Ins. Co. v. Pro-Metal Constr. Inc.*, No. 18-cv-2762(AJN), 2019 WL 1368851, at *4 (S.D.N.Y. Mar. 26, 2019) (quoting *Star Ins. Co.*, 2014 WL 4065093, at *3).

     To date, there is no dispute that XL remains exposed to liability on the Willard Claim ($15,971.97), the United Rentals Monmouth Claim ($64,947.86), and the Depcom Demand ($1,545,743.15). ECF 40-1 ¶¶ 41–42, 55–56, 69–72. This demand for collateral is supported by

ample documentation.  ECF 40-18, at 6 (Depcom Demand); ECF 40-10, at 3-6 (Willard Claim);

ECF 40-16, at 2-4 (United Rentals Monmouth Claim).  There is no claim that the parties to the

Indemnity Agreement were not dealing at arm's length or had unequal bargaining power.  *See BIB

Const. Co.*, 625 N.Y.S.2d at 552.  Defendants do not challenge the reasonableness of the sum

demanded and the Court finds nothing in the record to support a finding to the contrary.  As such,

XL is entitled to summary judgment on this point, and Defendants, jointly and severally, must

deposit $1,626,662.98 as collateral security with XL.[12]

### 2.    To Inspect Defendants' Financial Books and Records

XL is also entitled to summary judgment on its specific performance claim to inspect

Defendants' financial books and records.  New York courts (and other courts applying New York

law) routinely allow a surety to inspect the financial books and records of indemnitors under

indemnity agreements similar to the one here.  *See Colonial Sur. Co. v. A&R Cap. Assocs.*, 420 F.

Supp. 3d 38, 48–49 (E.D.N.Y. 2017) (granting summary judgment and allowing surety access to

indemnitors' books when the indemnity agreement provided for such relief over the objection of

indemnitors, who had already produced some documents); *Safeco Ins. Co. of Am. v. M.E.S., Inc.*,

289 F.R.D. 41, 52–53 (E.D.N.Y. 2011) (granting a surety's motion to compel documents based on

a provision in the indemnity agreement granting access to books and records); *Colonial Sur. Co.*

*v. Eastland Constr., Inc.*, No. 603656/08, 2009 WL 2440307 (N.Y. Sup. Ct. July 30, 2009)

---

[12] Instead of providing the collateral demanded, Plaintiffs allege that Defendants offered a "second lien position on equipment allegedly valued over $2 million with equity totaling $725,000 . . . ." ECF 40, at 19.  This offer was rejected by Plaintiff. *Id.* at 20.  Accordingly, the offer fails to satisfy the plain language of the Indemnity Agreement which requires Defendants to "deliver to [XL] collateral security *in the form acceptable to [XL]*."  ECF 40-2, at 3 (emphasis added).  Given that XL's lien would be secondary to another creditor, and noting that the actual equity in the assets offered is far less than XL's exposure, ECF 40, at 20, Defendants' offer also fails to satisfy the Indemnity Agreement's requirement that "collateral security will be in an amount equal to 100% of all undischarged liability under all Bonds."  ECF 40-2, at 3.

(enforcing an indemnity agreement's provision and allowing a surety access to indemnitors' financial books and records for inspection and copying).

The Indemnity Agreement states that Defendants agreed, jointly and severally, that:

> If [XL] (i) receives any claim under any Bonds or (ii) establishes, in its sole discretion, any reserve, the Indemnitors will provide [XL] or its designees access to all records, including all financial records, of the Indemnitors for the purposes of examining and copying the same.

ECF 40-2 ¶ 4. Defendants do not dispute that the Indemnity Agreement imposes this unambiguous and unequivocal obligation on them. As such, the Court grants summary judgment on this point and orders that Defendants provide XL with access to their books and records in accordance with the Indemnity Agreement.

### C. Common Law Indemnification from BCR

In addition to contractual indemnification, XL is also entitled to common law indemnification from BCR. Under longstanding New York law, "a surety is equitably entitled to full indemnity against the consequences of a principal obligor's default." *Lori-Kay Golf v. Lassner*, 460 N.E.2d 1097, 1098 (N.Y. 1984) (citing *Thompson v. Taylor*, 72 N.Y. 32 (1878); *Leghorn v. Ross*, 384 N.Y.S.2d 830 (N.Y. App. Div. 1976), *aff'd*, 369 N.E.2d 763 (N.Y. 1977)); *see also United Rentals (North Am.), Inc. v. Iron Age Tool Corp.*, 57 N.Y.S.3d 177, 180 (N.Y. 2017). "A surety's contractual right to indemnification does indeed coexist with its right to common law indemnification." *A&R Cap. Assocs.*, 420 F. Supp. 3d at 46–47 (citations omitted). Here, XL, as surety, executed the Depcom and Monmouth Bonds in favor of BCR as principal. XL has incurred losses, costs, and expenses in the amount of $729,377.85 as a result of claims it has received against the Bonds from various sub-subcontractors. Defendants do not challenge Plaintiff's claim and have effectively "conceded the point." *Id.* at 45. Therefore, XL is entitled to summary judgment for common law indemnification and damages in the amount requested.

### D. *Quia Timet* Relief and Exoneration

XL has also moved for summary judgment on its claim for *quia timet* relief against all Defendants.  "*Quia timet* is the right of a surety to demand that the principal place the surety 'in funds' when there are reasonable grounds to believe that the surety will suffer a loss in the future because the principal is likely to default on its primary obligation to the creditor."  *Borey v. Nat'l Union Fire Ins. Co.*, 934 F.2d 30, 32 (2d Cir. 1991) (citing *New Orleans v. Christmas*, 131 U.S. 191, 212 (1889)).  "To recover under a theory of *quia timet* . . . , a surety must establish that: (1) the debt . . . will come due . . . ; (2) the principal is or will be liable for the debt; and (3) absent equitable relief, the surety will be prejudiced because it will be forced to advance the money to the creditor."  *A&R Cap. Assocs.*, 420 F. Supp. 3d at 47 (citing *Borey*, 934 F.2d at 32).  Courts have found such equitable relief unnecessary (or even unavailable) when the surety is entitled to relief under a contract.  *See id.* at 48 ("The Court finds it unnecessary to reach the question of Plaintiff's entitlement to *quia timet* relief given that Plaintiff's motion for summary judgment for contractual collateral security in the amount of $259,827.96 has been granted."); *Fid. & Deposit Co. of Md. v. Edward E. Gillen Co.*, 926 F.3d 318, 327 (7th Cir. 2019) (collecting cases where federal courts "have declined to use their equitable powers to supplement a surety's rights under a written contract").  Indeed, parties similarly situated to Plaintiff have conceded that a count seeking *quia timet* relief is rendered moot when summary judgment is granted on contract-based counts.  *See Berkley Reg. Ins. Co. v. Murray*, No. DKC 15-0563, 2016 WL 235191, at *3 n.3 (D. Md. Jan. 20, 2016) ("According to Plaintiff, Count II [*quia timet* relief] will be rendered moot if the court grants summary judgment on Counts I [indemnity] and II [specific performance].").  I similarly find it unnecessary to reach the question of *quia timet* relief because Plaintiff's motion for summary judgment for collateral security has been granted.  Moreover, it is not clear that the third element

of the requested relief is even satisfied because Defendants are already required to deposit $1,626,662.98 with XL as collateral security under the explicit terms of the Indemnity Agreement. *See* ECF 40-2 ¶ 8.  The result is the same whether or not Plaintiff is entitled to *quia timet* relief: Defendants must post that amount of collateral with XL.  Accordingly, the Court follows the lead of the Eastern District of New York in *A&R Capital Associates* and declines to grant summary judgment on Count V as the claim is effectively moot.  *A&R Cap. Assocs*, 420 F. Supp. 3d at 47-48.

### E.    Exoneration Against BCR

Exoneration is closely related to *quia timet* relief but differs in timing as exoneration "is the surety's right, after the principal's debt has matured, to compel the principal to honor its obligation to the creditor."  *Borey*, 934 F.2d at 32 (citing *Filner v. Shapiro*, 633 F.2d 139, 142 (2d Cir. 1980)).  "To recover under a theory of . . . exoneration, a surety must establish that: (1) the debt is presently due . . . ; (2) the principal is or will be liable for the debt; and (3) absent equitable relief, the surety will be prejudiced because it will be forced to advance the money to the creditor."  *A&R Cap. Assocs.*, 420 F. Supp. 3d at 48–49 (citing *Borey*, 934 F. 2d at 32).  As was the case in *Eastland Const. Inc.*, "[e]xoneration is also provided for as a matter of contractual right in the Indemnity Agreement."  2009 WL 2440307; ECF 40-2 ¶¶ 3, 5.  Exoneration is enforced by requiring indemnitors to "post adequate collateral to satisfy all claims pending against the [bonds]."  *Eastland Const., Inc.*, 2009 WL 2440307.

Here, like the claim for *quia timet* relief, a claim can be raised that XL has not met the third element for common law exoneration because the Indemnity Agreement explicitly entitles Plaintiff

to exoneration and thus there is another avenue for Plaintiff to reach the requested relief.[13] *See* ECF 40-2 ¶¶ 3, 5.  At least one court has remarked that a claim for exoneration is likely moot where, like here, summary judgment has been granted on a companion claim for indemnity.  *See Safeco Ins. Co. of Am. v. M.E.S., Inc.*, No. 09CV3312PKCVMS, 2017 WL 1194730, at *10 (E.D.N.Y. Mar. 30, 2017), *aff'd*, 910 F.3d 705 (2d Cir. 2018) ("As a practical matter, however, Safeco treats all of its claims as essentially coterminous, acknowledging that '[u]pon a judgment of entitlement to full indemnity, the remainder of the relief requested in Safeco's various Counts would likely be rendered moot.'") (citation omitted).  However, the court in Safeco appeared to grant summary judgment on the exoneration claim nonetheless.  *Id.* at *35.  Another court denied summary judgment because the alleged loss at the heart of an exoneration claim was speculative and had not matured.  *See A&R Cap. Assocs.*, 420 F. Supp. 3d at 48.

Here, there is no dispute that Plaintiff is on notice as to several well-documented and unresolved claims against the bonds.  ECF 40-1 ¶¶ 41–42, 55–56, 69–72.  There is also no dispute Defendant has failed to honor its obligation to post adequate collateral after Plaintiff's explicit request to do so.  ECF 40-1 ¶¶ 74-75; ECF 40-2 at 2-3.  Thus, the uncontroverted record establishes that a debt is presently due, Defendants are liable for it, and absent the requested relief, Plaintiff will be prejudiced in that it will be forced to advance funds to creditors.  *Borey*, 934 F. 2d at 33. As such, to the extent exoneration is not commensurate with Defendants' obligation to deposit collateral with XL based on contractual indemnification, the Court grants summary judgment to XL on this count, and BCR will be required to exonerate XL in the amount of $1,626,662.98.

---

[13]  Indeed, XL's entire argument for exoneration focuses on the contractual language of the Indemnity Agreement, not the common law elements of exoneration.  ECF 40 at 30–31.

IV.     **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is hereby granted in part and denied in part as moot.  Plaintiff's Motion is granted as to its claim for contractual indemnification (Count III), its claim for specific performance to deposit collateral with XL (Count I), its claim for specific performance to inspect Defendants' financial books and records (Count II), and its claim for exoneration under the contract (Count VI).  Plaintiff's Motion is denied as moot as to Count V (*quia timet*).  Plaintiff's Motion is granted as to $729,377.85, the total present amount of XL's losses, costs, and expenses, including attorney's fees plus interest.  Defendants, jointly and severally, are also ordered to deposit with Plaintiff collateral security in the amount of $1,626,662.98 within a period of fifteen (15) days of the entry of this order.  Defendants are ordered to provide XL full and immediate access to all of their financial records and books. Plaintiff shall notify the Court within fifteen (15) days of the entry of this order whether it intends to prosecute the remaining claim for subrogation, or whether that claim can be dismissed with prejudice in light of the grant of summary judgment on Counts I, II, III, IV, and VI of the Verified Complaint.  An implementing Order will issue separately.

Dated: <u>November 23, 2022</u>                                        /s/
                                                                 Brendan A. Hurson
                                                                 United States Magistrate Judge